Edward M. SPAIN, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CF–1574.

District of Columbia Court of Appeals.

Submitted Sept. 7, 1995.

Decided Oct. 2, 1995.

Stephen F. Brennwald, Takoma Park, MD, appointed by the court, was on the brief, for appellant.

Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas C. Black,

Julieanne Himelstein, and Lenese C. Herbert, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, FARRELL, and KING, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of assault with intent to commit carnal knowledge[1] and taking indecent liberties with a minor child.[2] On appeal he contends that these two offenses merged into one, and that the trial court erred in allowing the jury to treat them as two separate offenses and to find him guilty of both. We disagree and accordingly affirm both convictions.

I

The evidence showed that appellant engaged in sexual misconduct with the ten-year-old niece of his girl friend. The niece, whom we shall call H., was spending the Martin Luther King holiday weekend with her aunt and appellant in the apartment where they both lived, along with the aunt's three children. On Monday afternoon the aunt left to go grocery shopping and to run some other errands, leaving her niece and her own children in the apartment with appellant.

During the aunt's absence, appellant invited H. to "wrestle" with him in the bedroom while the other children played in another room. When H. entered the bedroom, appellant told her to lock the door "because he didn't want [her] to get away" while they were wrestling. After a few minutes of tussling on the bed, appellant told H. that they were going to play a new game, the "pants game," which required each of them to pull down the other's pants and underwear. H. "didn't think it was right," but she agreed to play. They knelt together on the bed, and appellant pulled down H.'s slacks and underpants; she then pulled down his pants and underwear. After they did this a second time, H. said she "didn't want to play any more," but appellant persuaded her to play the game once again. This time appellant instructed H. to lie on the bed while her slacks and underpants were still down, and when she did, appellant fondled her vagina.

H. then repeated that she "didn't want to play any more," got up from the bed, and started to pull her pants back up. At this point appellant told H. to come over to the bed and lie down next to him because he wanted to tell her something. When she did so, appellant pulled H. toward him so that they were both lying on the bed facing each other. He placed his erect penis between her legs, at the same time moving his body back and forth, and said, "I know what will make it slipperier, Vaseline." H. finally managed to get away and ran out the bedroom door, but only after appellant cautioned her not to tell anyone what had happened. H. ran into the living room, picked up her two-year-old cousin, and started to cry. H. testified that appellant followed her out of the bedroom and repeated his warning not to tell anyone "because he'll go to jail and I'll get grounded or something." Some time later H.'s aunt returned to the apartment.

Later that night H. awoke to use the bathroom. She then went into the bedroom where her aunt and appellant were watching television. At first she lay down on the bed beside her aunt, but then, without saying a word, she got up, walked over to appellant, and punched him in the face. When her aunt asked what was wrong, H. told her what had happened earlier that day. The aunt called the police, and appellant was arrested. He gave a statement to the police in which he said that he was drunk at the time of the events in the bedroom and that H. had initiated the "game" by locking the door and trying to pull his pants down.

During the discussion of jury instructions, defense counsel argued that taking indecent liberties with a minor was a lesser included offense of assault with intent to commit carnal knowledge, so that the jury should be instructed to consider the greater charge first, and then the lesser charge only if they could not agree on his guilt of the greater. The government responded that such an in-

---

1. D.C.Code § 22–501 (1989).

2. D.C.Code § 22–3501(a) (1989).

struction would be proper only if both charged offenses had arisen from a single act, and that in this case the two charges were based on two separate acts: first, the pulling down of the child's pants and touching her vagina, and second, the subsequent placing of appellant's penis between H.'s legs and moving back and forth. Initially the trial judge agreed with defense counsel that there was only one continuous transaction, but over the luncheon recess he reconsidered and changed his mind. He ruled that the evidence had established two separate criminal events and instructed the jury accordingly.

## II

■ We agree with appellant that taking indecent liberties with a minor is a lesser included offense of assault with intent to commit carnal knowledge. *Allison v. United States,* 133 U.S.App.D.C. 159, 165, 409 F.2d 445, 451 (1969); *Younger v. United States,* 105 U.S.App.D.C. 51, 52, 263 F.2d 735, 736, *cert. denied,* 360 U.S. 905, 79 S.Ct. 1289, 3 L.Ed.2d 1257 (1959);[3] *see In re C.D.,* 437 A.2d 171, 173 (D.C.1981) (indecent liberties is a lesser included offense of carnal knowledge). But a greater and a lesser offense will merge only if they both stem from a single criminal act, or if the lesser is committed in order to effect the greater. When the two offenses "are triggered by separate acts, merger is precluded." *Norris v. United States,* 585 A.2d 1372, 1375 (D.C.1991).

■ This court has adopted the "fork in the road" test in cases such as this for determining whether there are two separate criminal acts or one single act:

If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not.

*Irby v. United States,* 129 U.S.App.D.C. 17, 22–23, 390 F.2d 432, 437–438 (1967) (en banc) (Leventhal, J., concurring), cited with approval in *Owens v. United States,* 497 A.2d 1086, 1095 (D.C.1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986). This test originated in the venerable Supreme Court decision in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a case which involved two consecutive sales of narcotics "with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold...." *Id.* at 302, 52 S.Ct. at 181. Rejecting the argument that the two sales constituted only one continuous offense because they were so close together in time, the Court held that they were the product of separate "impulses" and thus were separately punishable:

In the present case, the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one—that is to say, of a new bargain.

*Id.* at 303, 52 S.Ct. at 181. Thus the question we must answer in the present case is whether there was "evidence to show that [appellant] reached a decision point, a 'fork in the road' leading to a 'new impulse,' resulting in a different offense." *Norris v. United States, supra,* 585 A.2d at 1375 (citing *Owens, Irby,* and *Blockburger); accord, Wilson v. United States,* 528 A.2d 876, 880 (D.C. 1987) ("The question is whether the two offenses of which appellant was convicted constitute the same offense within the meaning of *Blockburger* ").

This court has been faced with this issue in several cases. In some we have held that a lesser offense merged with a greater one because the lesser was merely incidental to the greater and contemporaneous with it, or because the lesser was committed in furtherance of the greater. *E.g., Norris v. United States, supra* (assault with a dangerous weapon merged with armed robbery when evidence showed that victim was hit in the head with a metal pipe in order to keep him

---

**3.** *Allison* and *Younger* are binding on this court under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

quiet until robbery was completed);[4] *Watson v. United States*, 524 A.2d 736, 742 (D.C. 1987) (enticement of a minor merged with sodomy when there was "no evidence of a break in time or any new motive evincing a 'fresh impulse' "). In other cases, however, we have refused to recognize a merger, holding instead that there were two separate offenses, separately punishable. *E.g., Allen v. United States*, 580 A.2d 653 (D.C.1990); *Robinson v. United States*, 501 A.2d 1273 (D.C.1985); *Owens v. United States, supra.* What distinguishes the two groups of cases from one another is that, in each case in the second group, the evidence showed that there was an appreciable interval—albeit quite brief—between the two criminal episodes which showed that the defendant had reached a "fork in the road" or had acted in response to a "fresh impulse."

Thus in *Allen* we upheld two drug convictions for acts separated only by an interval long enough for a police car to drive around the block:

> Sometime during that interval, appellant reached the "fork in the road" of which we spoke in *Owens.* . . . After the car disappeared around the corner, appellant could have chosen to put his drugs away and go home. Instead, however, he decided to try again to distribute his drugs to a prospective customer. This decision, made after the first attempt was completed, was *the product of a new criminal impulse* and thus was punishable separately. . . .

580 A.2d at 658 (emphasis added). In *Robinson* the victim was grabbed and forced into a car, where the defendant first demanded that she perform oral sodomy on him and then, "[a]t some point thereafter," 501 A.2d at 1274, he removed the victim's slacks and undergarments and tried to have intercourse with her. We held that the second assault was the product of a "fresh impulse." *Id.* at 1276. In *Owens* a man was approached in an alley by three strangers, two of them armed, who demanded his money at gunpoint. When he tried to flee, he was shot. We held

that the pointing of the guns constituted an armed assault with intent to rob, and that the shooting of the victim was a separate assault with a dangerous weapon:

> Appellant's plan to rob Mr. Cook went sour when Cook turned away and attempted to flee. At that moment appellant reached the fork in the road; the subsequent shooting of Mr. Cook invaded a separate interest, and thus it constituted a separate offense. Thus we hold that appellant's two convictions were based on two separate criminal acts, one of which ended before the other began.

497 A.2d at 1097.

■ We conclude that the instant case falls into the second group of cases, not the first. Appellant's initial impulse was to pull H.'s pants down and fondle her genitalia. At that point, according to the evidence, he showed no interest in having intercourse with her. Had he stopped the "game" when H. got off the bed and said she "didn't want to play any more," his criminal liability would have ended there. The brief interval that followed gave appellant a moment to decide "whether to retreat or to invade another interest." *Owens*, 497 A.2d at 1096. Instead of "retreating" or discontinuing his actions, however, he lured H. back to the bed by saying that he wanted to tell her something. Thus we hold that what happened thereafter was "the product of a new criminal impulse . . . punishable separately from the earlier act. . . ." *Allen*, 580 A.2d at 658.

■ This holding also disposes of appellant's challenge to the jury instructions. He argues that the jurors should have been instructed to consider the indecent liberties charge only if they first found him not guilty of the greater charge of assault with intent to commit carnal knowledge. The premise of his argument, however, is that the two incidents constituted only one offense. Since we

---

4. To the same effect are *Simms v. United States*, 634 A.2d 442, 447 (D.C.1993) (when robbery victim was struck in the head with a hard object, that assault merged with the robbery because "the asportation of the stolen goods was on-

going"), and *Leftwitch v. United States*, 460 A.2d 993, 997 (D.C.1983) (defendant stabbed victim in the chest with a knife, seized his radio, and fled; assault with knife held to merge with armed robbery).

have held otherwise, we necessarily find no merit in his instructional argument.[5]

The judgment of conviction, therefore, is in all respects

*Affirmed.*

---

**5.** Besides, we have serious doubts about the propriety of presenting this issue to the jury by way of an instruction. Whether two charged offenses merge into one is not for the jury to decide; rather, it is a question of law for the court. *See* *Hagins v. United States,* 639 A.2d 612, 617 (D.C. 1994).