**Anthony BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 00–CO–572.**

District of Columbia Court of Appeals.

Submitted Dec. 12, 2001.
Decided April 4, 2002.

---

Anthony Brown, pro se.

Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, Washington, DC, were on the brief for appellee.

Before STEADMAN and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

GLICKMAN, Associate Judge:

This is an appeal from the denial of a motion to vacate multiple armed rape and sodomy convictions on double jeopardy grounds. We hold that because the motion, which was filed pursuant to D.C.Code § 23–110 (1996), properly is viewed instead as one to correct an illegal sentence pursuant to Super. Ct.Crim. R. 35(a), the dou-

ble jeopardy claim is not barred by the movant's failure to show cause for, or prejudice from, his failure to raise it previously on direct appeal from his conviction or in other proceedings. Reaching the merits of the double jeopardy claim, we reject it. We hold that where a defendant is convicted of multiple counts of a sexual offense such as rape or sodomy, each count being for a different act committed during a "gang rape" by a different principal perpetrator, the counts do not merge, and the defendant may be punished separately and cumulatively for each count. We therefore affirm the decision on appeal.

## I.

Pro se appellant Anthony Brown was convicted in 1986 of three counts of armed rape and three counts of sodomy. The evidence at Brown's trial established that he and two co-defendants took turns raping and then sodomizing the complaining witness while they held her at gunpoint. Brown threatened to kill her if she resisted or reported the crimes. On each count of armed rape, the trial judge, Judge Robert M. Scott, sentenced Brown to a prison term of ten to thirty years, with two of the terms to run consecutively and the third term to run concurrently. Judge Scott likewise imposed two consecutive prison terms of three to nine years plus one concurrent term of the same length on each sodomy count. Brown thus received a total sentence on the armed rape and sodomy charges of twenty-six to seventy-eight years of imprisonment. This court affirmed Brown's convictions on direct appeal in *Brown v. United States*, 567 A.2d 426 (D.C.1989).

Some ten years later, Brown moved pursuant to D.C.Code § 23–110 to vacate two of his armed rape and two of his sodomy convictions. In his pro se motion, Brown contended for the first time that his multi-ple prison terms violated the Double Jeopardy Clause of the Fifth Amendment. Brown argued that because the government had to prove the same elements for each of the three counts of armed rape and each of the three counts of sodomy with which he was charged, those counts merged after his conviction into a single offense of armed rape and a single offense of sodomy. In addition, Brown alleged that he was denied his Sixth Amendment right to effective assistance of counsel when his trial counsel failed to raise this double jeopardy claim at his sentencing.

Judge Walton, who succeeded the deceased Judge Scott for purposes of handling Brown's motion, denied the motion on its merits. Judge Walton ruled that each count of the indictment charged a separately punishable offense inasmuch as each count referred to a separate act of armed rape or sodomy that was committed by a different principal perpetrator, either Brown himself or a co-defendant whom Brown aided and abetted. Brown appealed Judge Walton's ruling to this court.

On appeal, the government asks us to affirm without reaching the merits on the ground that Brown's double jeopardy claim is "procedurally barred" by his inability to show either cause for, or prejudice from, his failure to raise it in earlier proceedings, in particular on direct appeal. If we reject that contention and reach the merits, the government argues that Judge Walton correctly ruled that Brown's convictions do not merge because Brown either committed or was complicit in three distinct armed rapes and three distinct sodomies committed by three different principal offenders. The government further argues that Brown's trial attorneys were not ineffective in failing to pursue a double jeopardy claim that was meritless. We address these issues in turn.

## II.

A motion under D.C.Code § 23–110 is not "a substitute for direct review." *Head v. United States,* 489 A.2d 450, 451 (D.C.1985). "Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." *Id.* (citing *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

Taking the requirements in reverse order, if Brown's double jeopardy claim has merit, he undeniably suffered "actual and substantial" prejudice, *Frady,* 456 U.S. at 170, 102 S.Ct. 1584 from his failure to raise it before now. Brown sustained such prejudice because at least the minimum portion of his aggregate sentence would be reduced considerably if his convictions were to merge, even if on remand the judge might resentence Brown on the surviving counts in order to effectuate, as nearly as possible, "the original sentencing plan." *Bean v. United States,* 606 A.2d 770, 772 (D.C.1992) (citing *Malloy v. United States,* 483 A.2d 678, 681 (D.C.1984), and *Thorne v. United States,* 471 A.2d 247, 249 (D.C.1983)). As the government argues, however, Brown has not shown cause for his failure to seek merger when he had the chance to do so on direct appeal. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The only suggestion of cause that Brown advanced in his § 23–110 petition was his conclusory allegation that his *trial counsel's* failure to raise his double jeopardy

claim *at sentencing* denied him his Sixth Amendment right to effective assistance of counsel. Brown was represented by new counsel in his direct appeal, however, and he has not contended that his appellate counsel was constitutionally ineffective. *See Mayfield v. United States,* 659 A.2d 1249, 1252 (D.C.1995) (citing, *inter alia, Watson v. United States,* 536 A.2d 1056, 1060 (D.C.1987) (en banc)) (holding that ineffective assistance of appellate counsel is an issue that "can only be litigated through the filing of a motion to recall the mandate in [the Court of Appeals]"). Trial counsel's failure to argue for merger of counts at sentencing did not prevent appellate counsel from making the argument on appeal.

At first blush, then, Brown's attempt to assert a double jeopardy claim in his § 23–110 motion appears to be barred because Brown has not proffered cause for his failure to raise the claim in his direct appeal. But Brown's claim that the trial court imposed multiple punishments for a single offense in violation of the Double Jeopardy Clause is, in the circumstances here, a claim that his sentence was illegal. As such, it is a claim that properly is made in a motion to correct an illegal sentence pursuant to Super. Ct.Crim. R. 35(a). *See (Samuel) Byrd v. United States,* 500 A.2d 1376, 1378 n. 5 (D.C.1985), *adopted en banc,* 510 A.2d 1035, 1037 (D.C.1986) (treating collateral attack on concurrent sentences for premeditated murder and felony murder arising from a single homicide as made pursuant to Rule 35(a)). It is immaterial that Brown did not cite Rule 35(a) in his § 23–110 motion. "Since we look to the substance of appellant's *pro se* request for collateral relief rather than its form, we will consider appellant's entitlement to relief under Super. Ct.Crim. R. 35(a)." *Id.; accord, Norman v. United States,* 623 A.2d 1165, 1167 (D.C.1993)

("Appellant's *pro se* [§ 23–110] motion should have been construed by the motions judge as a Rule 35(a) motion.").

■ Treating Brown's motion as made pursuant to Rule 35(a), is it subject to the requirement articulated in *Head* that a § 23–110 movant must show both cause for his failure to raise his claim on direct appeal and prejudice as a result of that failure? The court left this precise question open in *Norman*. *See* 623 A.2d at 1167–68. We now hold that the cause and prejudice showing normally required for a defaulted claim in a § 23–110 motion is not required when the motion properly is viewed as a Rule 35(a) motion to correct an illegal sentence. We come to this conclusion in light of the historical understanding of Rule 35(a), the purposes of the cause and prejudice requirement, and the injustice of requiring a defendant to serve a sentence that is in excess of that authorized for the offense of which the defendant was convicted.

■ Rule 35(a) is an unconditional grant of authority to the court to "correct an illegal sentence at any time." The premise is that an illegal sentence is "a nullity," *Prince v. United States*, 432 A.2d 720, 721 (D.C.1981), and is "void *ab initio* on its face." *(James) Byrd v. United States*, 487 A.2d 616, 617 (D.C.1985). The Rule is modeled on former Fed.R.Crim.P. 35(a),[1] under which it was settled that "[a]

sentence can be attacked as illegal ... regardless of whether the point could have been raised on an earlier direct appeal." 3 Charles Alan Wright, Federal Practice and Procedure: Criminal 2d § 584, p. 395 (2d ed.1982). *See, e.g., Popeko v. United States*, 513 F.2d 771, 773 (5th Cir.1975); *United States v. Lopez*, 428 F.2d 1135, 1138 (2d Cir.1970); *Norman*, 623 A.2d at 1167 n. 9. Consistent with this longstanding conception, this court has stressed that "[w]here the sentence is 'illegal' in the sense that the court goes beyond its authority by acting without jurisdiction or imposing a sentence in excess of the statutory maximum provided, then such sentence—because of the gravity of the error, the unqualified deprivation of one's liberty—may be changed at any time." *(Timothy) Robinson v. United States*, 454 A.2d 810, 813 (D.C.1982).[2] We have stated that correction of an illegal sentence pursuant to Rule 35(a) is "appropriate" even if the defendant fails to appeal his conviction at all. *(Samuel) Byrd*, 500 A.2d at 1389. Similarly, we have held that because an illegal sentence is void from the start, the trial court may correct it at any time on its own motion, even if the defendant has failed to seek any relief. *(James) Byrd, supra*. It is "clear," we have said, that a court has power to "entertain" a Rule 35(a) motion to correct an illegal sentence even if a prior motion to the same effect was denied. *Neverdon v. District of Columbia*, 468 A.2d 974, 975 (D.C.1983).[3] In numer-

1. "Thus, Super. Ct.Crim. R. 35(a) is to be construed in light of the interpretation given to its federal counterpart by the federal courts." *Norman*, 623 A.2d at 1167 n. 9.

2. Rule 35(a) distinguishes an "illegal" sentence from a sentence that merely is "imposed in an illegal manner." "[W]here a court of competent jurisdiction imposes a sentence within the limits authorized by the relevant statute, but commits a procedural error in doing so," the resulting sentence has been imposed in an illegal manner, but it is not therefore per se illegal within the meaning of

Rule 35(a). *(Timothy) Robinson*, 454 A.2d at 813; *accord, Littlejohn v. United States*, 749 A.2d 1253, 1256 (D.C.2000). Rule 35 imposes a 120 day window for the correction of a sentence that was imposed in an illegal manner. This time limitation is jurisdictional, and it may not be circumvented by means of a motion pursuant to D.C.Code § 23–110. *See (Timothy) Robinson*, 454 A.2d at 813.

3. The court does, however, have discretion to refuse to entertain such a motion if it simply relies on the same arguments as were "previ-

ous instances, moreover, this court itself "has not refrained from reaching merger issues which become apparent for the first time on appeal, ... even if not specifically raised by the appellant." *Monroe v. United States*, 600 A.2d 98, 100 n. 2 (D.C.1991) (citations omitted); *see also Davis v. United States*, 641 A.2d 484, 495 n. 28 (D.C. 1994). *But cf. Hicks v. United States*, 658 A.2d 200, 203 n. 7 (D.C.1995) (finding it unnecessary to decide whether plain error standard of review applies to merger issue raised for the first time on appeal). Our case law in this area makes sense only if the procedural default rules that are applicable generally to § 23–110 motions do not apply to the correction of an illegal sentence.

The reasons for a cause and prejudice requirement when procedurally defaulted claims are asserted in a collateral attack on a conviction are almost entirely absent when the claim is only that the sentence was beyond the power of the court to impose. Setting aside federalism concerns, which are not present here, the primary rationale is that collateral attacks undermine the finality of convictions, weaken the deterrent effect of the criminal law and, when a new trial is required, "prejudice the government and diminish the chances of a reliable criminal adjudication." *McCleskey v. Zant*, 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). But a Rule 35(a) challenge to an illegal sentence "presupposes a valid conviction and may not, therefore, be used to challenge alleged errors in proceedings that occur prior to the imposition of sentence." *Allen v. United States*, 495 A.2d

1145, 1149 (D.C.1985) (en banc). Correction of an illegal sentence preserves the finality of the defendant's conviction (merger merely eliminates unwarranted duplication), and does not result in a new trial. The defendant does not escape merited punishment, but only the punishment that could not lawfully be imposed. The deterrent effect of the criminal law is not jeopardized, and it would be the rare case in which the legitimate interests of the government are threatened.

A secondary justification that has been offered for the cause and prejudice requirement is that "collateral litigation places a heavy burden on scarce ... judicial resources, and threatens the capacity of the system to resolve primary disputes." *McCleskey*, 499 U.S. at 491, 111 S.Ct. 1454. But Rule 35(a) motions to correct an illegal sentence are rare, typically raise questions of law that do not require new fact finding, and so represent a minimal burden on the administration of justice. Finally, it has been suggested that without a cause and prejudice requirement for defaulted claims, litigants may "withhold claims for manipulative purposes." *Id.* But we think that a defendant who is given a heavier sentence than the law allows has every incentive to object as soon as possible, whether or not a procedural default rule may bar a future claim.

A final consideration that inclines against a procedural bar to a *bona fide* Rule 35(a) motion is the potential "gravity of the error," *(Timothy) Robinson*, 454 A.2d at 813, when an illegal sentence—e.g., a lengthy term of imprisonment that is

---

ously advanced unsuccessfully," at least absent a material change of circumstances:

> [A]lthough strict principles of res judicata do not apply to motions seeking relief from an illegal sentence, "[t]his does not mean that a prisoner may again and again call upon a court to repeat the same ruling...." *United*

*States ex rel. Gregoire v. Watkins*, 164 F.2d 137, 138 (2nd Cir.1947). A sentencing court should have discretionary power to "protect itself against a pertinacious relator." *Id.*

*Neverdon*, 468 A.2d at 975–76.

forbidden by law—is imposed. The Supreme Court has held that procedural default rules are waived when necessary to avoid a "fundamental miscarriage of justice." *Carrier*, 477 U.S. at 495–96, 106 S.Ct. 2639 (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)); *see also Mayfield*, 659 A.2d at 1255–56. Narrowly applied, this "miscarriage of justice" exception to the cause and prejudice requirement is available only to defendants who credibly claim that they were "actually innocent" of the underlying crime. However, the miscarriage of justice exception may not necessarily be so limited. In appropriate circumstances, some courts have held the exception applicable where the defendant was not innocent of the underlying crime but was given an illegal and excessive sentence. *See Jones v. Arkansas*, 929 F.2d 375, 381 (8th Cir.1991) (commenting that "[i]t would be difficult to think of one who is more 'innocent' of a sentence than a defendant sentenced under a statute that *by its very terms* does not even apply to the defendant"); *see also Sawyer v. Whitley*, 505 U.S. 333, 340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (holding so-called "actual innocence" exception applicable where, but for constitutional error, no reasonable juror would have found defendant eligible for death penalty); *United States v. Maybeck*, 23 F.3d 888, 893 (4th Cir.1994); *Mills v. Jordan*, 979 F.2d 1273, 1278 (7th Cir.1992); *Borrego v. United States*, 975 F.Supp. 520, 525 (S.D.N.Y.1997). *But see Selsor v. Kaiser*, 22 F.3d 1029, 1035–36 (10th Cir.1994); *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir.1993).

We conclude that in the interests of justice, a motion to correct an illegal sentence should be considered without regard to cause and prejudice requirements. In the present case, therefore, Brown's failure to raise his double jeopardy challenge to the legality of his sentence at the time of his sentencing or on direct appeal does not bar our consideration of his claim on its merits.

## III.

■■■■ The Double Jeopardy Clause of the Fifth Amendment prohibits "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). More than one conviction for the same offense contravenes this prohibition even if the sentences imposed are concurrent, because of the adverse collateral consequences that a conviction may have. *See (Samuel) Byrd*, 500 A.2d at 1380–1382. The Double Jeopardy Clause requires that duplicative convictions for the same offense be vacated (or "merged") so as to leave only one conviction and sentence remaining for that offense. Invoking these principles, Brown argues that his multiple convictions for the offenses of armed rape and sodomy cannot stand.

■■■■ We reject this argument because each count against Brown charged him with a different act of rape or sodomy that was committed by a different principal perpetrator (either Brown himself or one of his co-defendants, whom Brown aided and abetted). There is no double jeopardy bar to "separate and cumulative punishment for separate criminal acts," even if those separate acts do happen to violate the same criminal statute. *Gardner v. United States*, 698 A.2d 990, 1002 (D.C. 1997) (quoting *Owens v. United States*, 497 A.2d 1086, 1094–95 (D.C.1985)).

Brown can derive no benefit from the rule that a defendant may be convicted of only one count of assault "when the evidence establishes 'a continuing course of assaultive conduct,' rather than 'a succession of detached incidents.'" *In re T.H.B.*, 670 A.2d 895, 900 (D.C.1996) (quoting

*Glymph v. United States*, 490 A.2d 1157, 1160 (D.C.1985)) (holding that two convictions for aiding and abetting physical assaults merged where the assaults were committed in a single attack by several assailants acting in concert, even though "the identity of the principal offender changed from moment to moment").[4] It is true that the court has applied this "continuing offense" rule where the offense charged was rape. *See Gray v. United States*, 544 A.2d 1255, 1258 (D.C.1988) (holding that conviction on only a single count of rape was appropriate where defendant's three acts of sexual penetration were part of one continuous, brief episode of forcible intercourse, and short breaks between acts were not significant). But the material facts of *Gray* were atypical. Usually this court has rejected the argument that repeated acts of sexual violence or abuse constituted only a single continuous offense. *See Gardner*, 698 A.2d at 1003 (upholding two rape convictions where the defendant sexually assaulted his victim, rested for a few minutes, and then "went back . . . and started over again"); *Spain v. United States*, 665 A.2d 658, 661 (D.C.1995) (affirming two convictions for sexually abusing a minor where the defendant fondled a young girl, stopped when she asked him not to continue, and then enticed her back for a second round of the "game"); *(Julius) Robinson v. United States*, 501 A.2d 1273, 1276 (D.C.1985) (regarding offenses as "separate and distinct" where "the first assault had come to an end when the attempt at forced sodomy failed, and . . . the second assault was the

result of a fresh impulse") (internal quotation marks and citation omitted).

Here, too, we must reject the "continuing offense" argument. As with the separate acts of sexual abuse in *Gardner, Spain* and *Robinson*—and unlike the closely related acts of sexual intercourse committed by a single person in *Gray* or the assaultive conduct committed by several persons together in *T.H.B.*—each discrete act of rape and sodomy committed by Brown and his co-defendants here had (at least in part) a separate purpose or impulse. Behind each successive act of rape and sodomy in this case was the separate impulse of a different principal perpetrator to obtain his own sexual gratification. Each time Brown and his co-defendants changed places and took their respective turns in sexually assaulting their victim, they came to a new "fork in the road." *Irby v. United States*, 129 U.S.App. D.C. 17, 22–23, 390 F.2d 432, 437–38 (1967) (en banc) (Leventhal, J., concurring), *quoted in Owens*, 497 A.2d at 1095. At each such fork, they chose to satisfy a different criminal impulse by inflicting a new outrage on the complainant. Hence the individual acts of Brown and his co-defendants did not coalesce into a single continuing offense even though they were all part of one "gang rape"; for where "successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." *Blockburger v. United States*, 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932)

---

4.  We have explained this rule as follows:

Some crimes, by their very nature, tend to be committed in a single continuous episode rather than in a series of individually chargeable acts. An ordinary assault, for example—that is, an assault that is not accompanied by an intent to commit another offense—is usually such a crime. "The fact

that a criminal episode of assault involves several blows or wounds, and different methods of administration, does not convert it into a case of multiple crimes for purposes of sentencing."

*Owens*, 497 A.2d at 1096 (quoting *Smith v. United States*, 135 U.S.App. D.C. 284, 285, 418 F.2d 1120, 1121 (1969)).

(citation omitted), *quoted in Owens*, 497 A.2d at 1095. Brown's "successive intentions make him subject to cumulative punishment." *Id.*

As Brown was convicted of separate criminal acts, his double jeopardy claim is without merit.[5] Judge Walton properly denied Brown's motion to vacate his convictions on this ground, and we affirm that ruling.

*So ordered.*

---

[5.] It follows that Brown's ineffective assistance claim, which is based on trial counsel's failure to raise the double jeopardy challenge, is also without merit. *See Washington v.* *United States*, 689 A.2d 568, 572 (D.C.1997) ("[T]he failure to file a meritless motion does not constitute ineffective assistance of counsel.").