Steven V. ELLISON, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CF–375.

District of Columbia Court of Appeals.

Argued Feb. 13, 2007.
Decided March 29, 2007.

Michael J. Satin, Public Defender Service, with whom James Klein and Richard S. Greenlee, Public Defender Service, were on the brief, for appellant.

B. Patrick Costello, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, Roy W. McLeese III, David B. Goodhand, Alexandra Foster, and Youli Lee, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

The sole question presented on this appeal is whether Steven V. Ellison's two convictions for misdemeanor sexual abuse, one based on his vaginal intercourse with then eleven-year-old Q.M., and the second based on attempted anal intercourse a short time later, merge. We hold that they do not, and we affirm both convictions.[1]

## I.

The principal prosecution witness at Ellison's non-jury trial was Q.M., the complainant. Q.M. testified that on March 17, 2003, at about 2:30 a.m., Ellison and a companion named Larry came over to the apartment at which Q.M. lived with her grandmother, her mother, her older brother, Todd, and her older sister Bianca. Bianca had apparently met Larry at a shopping mall and had invited him over.

After Ellison and Larry had been in the apartment for some time, Ellison asked Q.M. where the bathroom was located. Q.M. led him to the hallway bathroom, which Ellison then entered. Q.M. testified that shortly thereafter, as Ellison was leaving the bathroom and Q.M. was walking along the hallway, Ellison grabbed her shirt and pulled her into the bathroom.[2] Once the two of them were inside, Ellison pulled down Q.M.'s pajama pants and un-

---

1. Ellison was also charged with two counts of simple assault. Following a bench trial, he was convicted of all four counts. The government has conceded, however, and we agree, that the assault convictions merge into the sexual abuse convictions. *See Mungo v. United States*, 772 A.2d 240, 246 (D.C.2001).

2. Q.M.'s sister Bianca, also a prosecution witness, testified that Ellison "did not pull [Q.M.] into the bathroom." She further related that

she tried to enter the bathroom while Ellison and Q.M. were inside but that the door was slammed in her face. According to Bianca, Q.M. was laughing and "acting like herself" when she came out of the bathroom, and subsequently sat on Ellison's lap. The differences between Bianca's account and Q.M.'s testimony, however, go only to the question whether the sexual activity was voluntary, which is irrelevant in light of Q.M.'s age.

derwear, and he told her to lie on her back on the floor. According to Q.M., Ellison pulled down his own jeans and, from a kneeling position, inserted his penis into Q.M.'s vagina. Ellison then lay on top of Q.M. and engaged in sexual activity for six to eight minutes.

Next, Ellison sat down on the toilet seat, grabbed Q.M.'s waist, and put the girl on top of him. With his penis inside Q.M.'s vagina, Ellison moved her up and down. Q.M. testified that she felt pain as a result of this activity, which continued, by Q.M.'s estimation, for approximately four minutes. She stated that she was crying.

Ellison then stood up and moved Q.M. to a position in which she was leaning over the sink. Q.M. testified that Ellison then tried to "put his penis in my butt" but that he "didn't get nowhere at that time." Ellison's penis touched the outer surface of Q.M.'s anus, but (as the government acknowledges) there was no penetration.[3]

## II.

The trial judge explicitly credited Q.M.'s testimony, and he rejected the notion that it had been fabricated. The judge noted that Q.M., whom he described as "a fairly young looking eleven," was under the age of sixteen, and that she was therefore incapable of giving legal consent. Accordingly, the judge found Ellison guilty of all four charges. See note 2, *supra*. Specifically, the judge found that Ellison had vaginally penetrated Q.M. and that he had had "anal sexual contact with her."

In denying Ellison's motion for judgment of acquittal, the judge had previously rejected the defense contention that the charges were multiplicitous. Viewing the record, and drawing all reasonable infer-

ences, in the light most favorable to the government, the judge concluded that one might reasonably

> find that one act had been completed and a new and separate sexual desire was being acted upon with fresh impulse at the end of the vaginal intercourse and [at] the beginning of the attempted anal intercourse.

## III.

■ Ellison contends that his convictions for misdemeanor sexual abuse merge because, according to him, the entire incident constituted "a single course of unconsented sexual activity." Citing *Cullen v. United States*, 886 A.2d 870 (D.C.2005), Ellison argues that the fact that he directed his assault at different parts of the victim's body did not convert his conduct into two separate offenses. Ellison also asserts that there was no appreciable length of time between the vaginal intercourse and the attempt to penetrate Q.M.'s anus, that he could not have acted pursuant to a "fresh impulse," and that therefore there could have been no "fork in the road."

■ The Double Jeopardy Clause of the Fifth Amendment prohibits a second prosecution for a single crime, and it protects the defendant against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "There is, [however,] no double jeopardy bar to 'separate and cumulative punishment for separate criminal acts,' even if those separate acts do happen to violate the same criminal statute." *Brown v. United States*, 795 A.2d 56, 63 (D.C.2002) (quoting *Gardner v. United States*, 698 A.2d 990, 1002

---

**3.** Ellison did not testify. Although certain medical and other testimony was presented, none of that testimony was relevant to the question before us, namely, whether the two convictions for misdemeanor sexual abuse merge.

(D.C.1997)); *see also Owens v. United States,* 497 A.2d 1086, 1094–95 (D.C.1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986).

■ Whether two charged offenses merge into one is a question of law. *Blackledge v. United States,* 871 A.2d 1193, 1196 (D.C.2005); *Spain v. United States,* 665 A.2d 658, 662 n. 5 (D.C.1995). We therefore review *de novo* the trial court's rejection of Ellison's claim that his convictions merge and that there has been a violation of the Double Jeopardy Clause. *See, e.g., Roy v. United States,* 871 A.2d 498, 510 (D.C.2005); *Sanchez–Rengifo v. United States,* 815 A.2d 351, 354 (D.C. 2002) (citations omitted).

■ Where a defendant has been convicted of two violations of the same statute, we have employed a "fact-based analysis" to determine whether "separate criminal acts have occurred." *Sanchez–Rengifo,* 815 A.2d at 354 (citing *Morris v. United States,* 622 A.2d 1116, 1130 (D.C.), *cert. denied,* 510 U.S. 899, 114 S.Ct. 270, 126 L.Ed.2d 221 (1993), and *Gray v. United States,* 544 A.2d 1255, 1257–59 (D.C.1988)). "For purposes of this fact-based merger analysis, criminal acts are considered separate when there is an appreciable length of time 'between the acts that constitute the two offenses, or[4] when a subsequent criminal act was not the result of the original impulse, but a fresh one.' " *Sanchez–Rengifo* at 354–55 (quoting *Hanna v. United States,* 666 A.2d 845, 853 (D.C.1985)) (emphasis added); *see generally Blockburger v. United States,* 284 U.S. 299, 303, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We have explained that

[i]f at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not.

*Owens,* 497 A.2d at 1095 (quoting *Irby v. United States,* 129 U.S.App. D.C. 17, 22–23, 390 F.2d 432, 437–38 (1967) (en banc)). Moreover, an interval may be quite brief and still satisfy the "appreciable period of time" factor. *Gardner,* 698 A.2d at 1002 (citing *Spain,* 665 A.2d at 661).

Applying the foregoing principles to the record before us, we conclude that Ellison was properly convicted of, and sentenced for, two separate counts of misdemeanor sexual abuse. The evidence, in our view, belies his contention that the events in the hallway bathroom constituted a single continuous course of conduct, with no intervening fork in the road.

We turn first to Ellison's penetration of Q.M.'s vagina. According to Q.M., Ellison grabbed her, pulled her into the bathroom, and turned off the lights. He then proceeded to put Q.M. on the floor and to insert his penis into the eleven-year-old victim's vagina. Ellison continued his penetration of Q.M. for six to eight minutes on the floor. Then, after sitting down on the toilet seat, he engaged in further vaginal intercourse with Q.M. for about four more minutes.[5] An impartial trier of fact could therefore reasonably find that vaginal intercourse had continued, in two stages, for an appreciable period of time. One might

---

4. The use in *Sanchez–Rengifo* of the word "or" signifies that only one, but not both, of the conditions described in the quoted sentence must be satisfied in order to defeat a claim of merger.

5. The government has not claimed that the initial vaginal intercourse on the floor and the subsequent penetration while Ellison was on the toilet seat constituted separate crimes, and we do not address that question.

likewise reasonably infer that, by the end of the activity during which Ellison was seated on the toilet seat, he had accommodated his desire for vaginal sexual activity, and that he then chose to satisfy a different criminal impulse by attempting to have anal intercourse with Q.M. *See Brown,* 795 A.2d at 64 ("Usually this court has rejected the argument that repeated acts of sexual violence or abuse constituted only a single continuous offense.").

Indeed, the government asserts, and the trial court could reasonably find, that after the vaginal intercourse had been completed, Ellison elected to change course entirely. Rather than release his eleven-year-old victim and end his abuse of her, Ellison decided to attempt to have a different kind of sexual contact with her. With that plan in mind, Ellison took the time to disengage himself from Q.M. and to make her lean against the sink. Even at this point, after having adjusted Q.M.'s position, Ellison could have stopped and walked away. Instead, after having considered how best to set up anal intercourse with his victim in the confines of the small bathroom, Ellison tried to initiate such intercourse. An impartial trier of fact could fairly conclude that the break between the completion of vaginal intercourse and the planning and execution of attempted anal intercourse constituted a "fork in the road," *i.e.,* the point at which Ellison made the conscious decision to invade a new criminal interest and to satisfy a new criminal impulse. Having decided to seek a new and different kind of sexual gratification, Ellison caused or directed Q.M. to bend over, with her back to him, and to place her hands on the sink. Thus, after vaginal intercourse from two different positions had been completed, Ellison made the decision, surely a conscious and deliberate one, to attempt to

penetrate Q.M.'s anus. He even commented on the contrasting results of his accommodation of his two different impulses, remarking with apparent disappointment that Q.M. was not "open back there yet," so that he was unable to obtain gratification of the second impulse.

Nothing in the record suggests that, on her own initiative, Q.M. assumed the various positions in which she was placed to enable Ellison to have sexual contact with her.[6] On the contrary, it was obviously Ellison who "called the shots." It was he who directed where Q.M. was to lie or stand, and when and where she should move next in order to accommodate his sexual demands. Indeed, Q.M. testified that she was terrified, and the trial judge so found. Q.M. began to cry when Ellison forced his penis into her vagina, and she continued to cry thereafter. Thus, Ellison orchestrated the successive sexual assaults by first placing Q.M. on the floor, then on top of him as he sat on the toilet, and finally next to the sink so that he could approach her from behind and attempt anal intercourse. These actions support a finding that Ellison "reformulated" his intent. *Sanchez–Rengifo,* 815 A.2d at 358–59. It was Ellison who provided the breaks between the various episodes, and his own actions provided him, at least, with the requisite fork in the road between the two types of sexual assault.

That the aggregate duration of these sexual encounters was no more than quarter of an hour is not dispositive. We stated in *Sanchez–Rengifo* that criminal acts are considered separate for merger purposes if (1) "there is an appreciable length of time between the . . . offenses," *or* (2) "when a subsequent criminal act was not the result of the original·impulse but [of] a fresh one." 815 A.2d at 355 (internal

---

**6.** This is not to suggest that if the change in Q.M.'s physical position had been initiated by

her, the two offenses would necessarily merge.

quotation marks omitted). Thus, if the attempted anal penetration in this case resulted from a fresh impulse, the requirement of an appreciable period of time has no application. This makes sense, for one can experience and act upon a fresh impulse almost immediately. Moreover, for merger purposes, an "appreciable period of time between the acts" may be "quite brief." *Gardner*, 698 A.2d at 1002; *accord, Spain*, 665 A.2d at 661.

Ellison relies on our recent decision in *Cullen* to support his theory that his actions constituted a single course of conduct. In our view, *Cullen* is not dispositive. The narrow issue presented in that case was whether, in enacting the misdemeanor sexual abuse statute, the legislature sought to create separate offenses in situations in which, during a single assault, the defendant had successively touched separate parts of the victim's body. The government argued that this question should be answered in the affirmative "because there are separate body parts enumerated in the definition of sexual contact." *Cullen*, 886 A.2d at 873. Rejecting the government's position, this court concluded that, although the statute was designed to be "flexible and reflective of the broad range of abusive conduct which does in fact occur," the language of the enactment was unclear as to whether, in what would otherwise be a single sexual assault, the defendant commits more than one offense simply by touching more than one part of the victim's body. *Id.* at 873–74. Applying the rule of lenity in our interpretation of the statute,[7] we held that the defendant's conduct in first kissing the victim's inner thigh and then her breast

did not constitute two separate crimes. *Id.* at 875.

*Cullen* differs from this case in decisive respects. In *Cullen*, the defendant kissed the two parts of the victim's body in sequence as she lay on the bed. *Id.* at 874–75. The young woman was not ordered to, and apparently did not, change her physical position, and in proceeding from the inner thigh to the breast, the defendant had no occasion to rearrange his own location or that of his victim. Indeed, the defendant kissed the victim's inner thigh and then, without necessarily moving more than his mouth, went on to kiss her breast. In this case, on the other hand, Ellison had ample time to contemplate and consider his next move, his next position, his next impulse, his next invasion, and he moved his victim (and himself) from place to place, and from position to position, to carry out his successive sexual ventures.

This case is more like *Sanchez–Rengifo* than it is like *Cullen*. In *Sanchez–Rengifo*, the defendant was charged, *inter alia*, with one count of second-degree child sexual abuse while armed and three counts of first-degree child sexual abuse while armed. All of the charges stemmed from a two-hour encounter between Sanchez–Rengifo and a fifteen-year-old girl. This court rejected Sanchez–Rengifo's claim that, because "there was no spatial or temporal separation between the several sexual acts, which all took place in the child's mother's bed," they should be "considered 'continuing crimes' for which multiple punishment are barred on Double Jeopardy grounds." *Id.* at 356.[8] After reviewing

---

7. Contrary to an apparent suggestion made at oral argument, this court's invocation in *Cullen* of the rule of lenity related solely to the question of statutory construction, and not to any factual issue regarding whether the defendant had reached a fork in the road.

8. Sanchez–Rengifo lured the victim into a bedroom and then, at knife-point, licked her breasts, rubbed his penis against her, inserted his penis into her vulva, forced her to perform fellatio, attempted to have anal intercourse, licked her vagina, and then penetrated her

the legislative history of the statute, the court concluded that the legislature "viewed each of the[] methods of committing first and second-degree child sexual abuse [outlined in the statute] as different in nature and character," and therefore intended the statute to protect a variety of "different interests." *Id.* at 357. Relying on *Gardner,* 698 A.2d at 1002–03, and *Owens,* 497 A.2d at 1096–97, we held that the defendant had repeatedly reached "fork[s] in the road," and that on each occasion he was "driven by a 'fresh impulse' " to "commit different sex acts upon his victim." *Sanchez–Rengifo* at 358–59. In other words, by first engaging in one type of conduct prohibited by the statute, and by then moving on to a different kind of activity also prohibited by the same statute, Sanchez–Rengifo " 'chose to satisfy a different criminal impulse by inflicting a new outrage on the complainant.' " *Id.* at 359 (quoting *Brown,* 795 A.2d at 64). Accordingly, there were successive violations of the statute, and the defendant's convictions did not merge. *Id.* at 359.

As in *Sanchez–Rengifo,* the charged offenses in this case occurred during the course of one encounter, albeit a far briefer one,[9] between Ellison and his victim. But also, like the defendant in *Sanchez–Rengifo,* Ellison, by proceeding from successive vaginal penetrations from two different positions to an attempt to have anal intercourse, "chose to satisfy a different criminal impulse." *Id.* at 359. In this case, moreover, the victim of the "new [type of] outrage," *Brown,* 795 A.2d at 64, was an eleven-year-old girl.

Accordingly, Ellison's convictions for sexual abuse do not merge, and they are therefore affirmed. By consent of the parties, Ellison's convictions for simple assault are vacated.

*So ordered.*[10]

---

vulva again. *Sanchez–Rengifo,* 815 A.2d at 356–57. The second-degree child sexual abuse was based on an allegation that he engaged in "sexual contact" with the child by "touching her breasts with his mouth." *Id.* at 355 n. 6. Each of the three first-degree sexual assault charges was based on a different kind of "sexual act" with the child. The government alleged (1) that the defendant "put his mouth on [the child's] vulva"; (2) that he "penetrat[ed] her vulva with his penis"; and (3) that he "put[] his penis in her mouth." *Id.*

9. Although the sexual abuse in Sanchez–Rengifo lasted far longer than the defendant's conduct in this case, the authorities that we have cited establish beyond peradventure that Ellison had ample time to form and act upon

a fresh impulse before he attempted to penetrate his victim anally.

10. Ellison's counsel contended at oral argument that the two offenses merged because, as in *Cullen,* the defendant was charged only with misdemeanors (rather than felonies) under the same misdemeanor statute. Whether the two offenses merge, however, turns on whether at the time that he committed the second offense, the defendant had reached a fork in the road. It is not, and cannot be, dependent on a charging decision by the prosecutors which was made long after Ellison had sexually abused Q.M. in two different ways.