Bernard JENKINS, Appellant

v.

UNITED STATES, Appellee.

No. 06–CM–657.

District of Columbia Court of Appeals.

Submitted July 14, 2009.

Decided Aug. 27, 2009.

---

Jerry Ray Smith, appointed by the court, for appellant.

Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese, III, John P. Mannarino, Stephanie L. Brooker, and J. Thomas Spiggle, Assistant United States Attorneys, for appellee.

Before NEWMAN, TERRY, and SCHWELB, Senior Judges.

TERRY, Senior Judge:

After a non-jury trial, appellant was convicted on two counts of misdemeanor sexual abuse, in violation of D.C.Code § 22–3006 (2001). Appellant argues that the trial judge, by assuming the victim's testimony to be truthful, violated his right as a criminal defendant to be presumed innocent. He also contends that the two acts of abuse for which he was convicted constituted only one offense, and thus he claims that he was convicted twice for the same conduct in violation of the Double Jeopardy Clause of the Constitution. Appellant's first contention has no merit, and because appellant engaged in two distinct "sexual acts" under the statute, each the product of a fresh criminal impulse, the offenses do not merge. Accordingly, we affirm both convictions.

I

On the evening of September 27, 2004, the victim, eleven-year-old D.O., was at home sleeping in her mother's bed along with her two younger half-sisters and appellant.[1] D.O.'s mother, who was in the hospital at the time, had asked appellant to come over and watch the children in her absence.

D.O. testified that appellant woke her from her sleep and said she should go into the living room because her sisters were kicking her. Initially D.O. fell back asleep on the living room floor, but later she moved to a mat that appellant brought out for her. Some time later appellant directed her to go into her own room, where they would be alone, and to lie down on her bed, which she did. Appellant then told D.O. to take her clothes off, and she complied. Appellant removed his own sweatpants and boxer shorts, put Vaseline on his penis, and lay on top of D.O. He instructed her to open her legs and proceeded to place his penis into her vagina. D.O. testified that appellant penetrated her three times, but did not ejaculate. Appellant then removed his penis and inserted his index finger into her vagina.

After appellant withdrew his finger, he instructed D.O. to "go take a shower or wash off." She took a shower, put her clothes back on, and returned to the room where her sisters were asleep. Appellant also returned to the same bed, but D.O. slept in between her sisters so that appellant "wouldn't do anything else." D.O. woke up at around 4:00 o'clock in the morning, and again at 7:00, with appellant lying on top of her.

D.O. got up the next day "pretend[ing] nothing happened." When she started crying at school, however, a school counselor spoke with her. D.O. was crying "violently," but when she became somewhat calmer, she told the counselor that her stepfather had gotten into bed with her and had put his penis "inside of [her] ... the night before." D.O. was promptly

---

1. Appellant was the father of the two half-sisters, but not of D.O.

taken to the Children's National Medical Center, where a sexual assault nurse examiner conducted an examination of her. The nurse, Kristin Young Anderson, testified that during the examination D.O. said that appellant had "put his goods in me and then he put his finger in me, and then I went in my mother's room and stayed." Ms. Anderson stated that her examination of D.O. was "normal," meaning that she showed "no injuries" to her genitals and her hymen was intact.

Appellant's defense consisted largely of calling D.O.'s testimony into question by highlighting inconsistencies between her testimony and certain out-of-court statements. The police detective with whom D.O. first spoke about the incident, for example, testified as a defense witness that D.O. had told her that appellant did not have any "liquid or gel on his private part." The detective also said that D.O. told her in her first interview that she was in her mother's room watching a western movie, but in the second interview she said she was in the living room, watching television with her sisters and appellant. In addition, the defense focused on inconsistencies in D.O.'s statements as to whether appellant had taken off all his clothes or just his pants and underwear, and whether she took a shower after the assault for just a few minutes or a longer shower lasting fifteen or twenty minutes.

The trial court interrupted the closing arguments of both the prosecutor and defense counsel to pursue colloquies with each of them. During the prosecutor's summation, the court interjected to describe, at length, the consistencies and inconsistencies it perceived in the evidence and invited the prosecutor to respond to its questions. After the prosecutor had completed her argument, the court summarized the perceived inconsistencies in D.O.'s testimony and invited defense counsel to address those inconsistencies in her closing argument. The court explained to defense counsel:

> I want you to help me understand why the inconsistencies you believe loom so large that they could cause this Court to discredit her entire testimony.... I'm trying to figure out, when all is said and done, how this Court is supposed to determine ... that this child had a motive to lie and that she did in fact lie, based on the inconsistencies which obviate or negate the validity of really very significant detail.

Later the court again pressed defense counsel to explain how the various inconsistencies in D.O.'s statements undercut her credibility. Counsel responded that she doubted whether one inconsistency "in and of itself is that significant," but added that "in total, when the court ... looks at all of these relatively minor inconsistencies, they should give the court pause as to the whole story...."

After the closing arguments were completed, the court found appellant guilty on two counts of sexual abuse [2] and imposed two concurrent sentences.

## II

Appellant asserts that the trial court violated his constitutional right to due process by presuming that D.O.'s testimony was truthful, thereby placing the burden on him to prove his innocence. The record does not support this assertion. On the contrary, it is apparent to us that

2. The government had charged appellant by information with three counts of misdemeanor sexual abuse. During trial defense counsel moved to dismiss the third count, citing a lack of evidence to support that particular charge. The government did not oppose the motion, and the third count was dismissed.

the trial judge, as trier of fact, was quite appropriately considering "the manner of the witness, the nature of the testimony, and any other matter relating to the witness' possible motivation to speak falsely." *Cupp v. Naughten,* 414 U.S. 141, 149, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The judge's discussions with defense counsel show that she was sorting through the consistencies and inconsistencies which she perceived in D.O.'s testimony in an effort to assess her credibility, but nothing more. At no time did the judge apply a presumption of veracity to D.O.'s testimony or place an improper burden on appellant to prove his innocence. Even if appellant had properly raised an objection at the trial court level, which he did not, his argument provides no basis for reversal. *See Smith v. United States,* 295 A.2d 64, 68 (D.C.1972) ("absent some showing of plain error, courts in this jurisdiction have refused to notice claims of error raised for the first time on appeal"). We find no error, and *a fortiori* no plain error, in the trial judge's comments.

### III

■ Appellant also contends that the two sexual acts for which he was charged and convicted—penetrating D.O.'s vagina with his penis, and then again with his finger—constituted one single offense. Accordingly, appellant maintains, he was convicted twice for the same act. This court reviews such claims *de novo* to determine whether there has been a violation of the Double Jeopardy Clause of the Fifth Amendment. *See Sanchez–Rengifo v. United States,* 815 A.2d 351, 354 (D.C. 2002).

■ "The Double Jeopardy Clause prohibits a second prosecution for a single crime and protects against multiple punishments for the same offense." *Gardner v. United States,* 698 A.2d 990, 1002 (D.C.

1997) (citation omitted). "More than one conviction for the same offense contravenes this prohibition even if the sentences imposed are concurrent," as in this case, "because of the adverse collateral consequences that a conviction may have." *Brown v. United States,* 795 A.2d 56, 63 (D.C.2002). We have applied "a fact-based approach" in determining whether separate criminal acts have occurred. *Morris v. United States,* 622 A.2d 1116, 1130, *cert. denied,* 510 U.S. 899, 114 S.Ct. 270, 126 L.Ed.2d 221 (1993). "[C]riminal acts are considered separate when there is an appreciable length of time 'between the acts that constitute the two offenses, *or* when a subsequent criminal act was not the result of the original impulse, but a fresh one.'" *Sanchez–Rengifo,* 815 A.2d at 355 (quoting *Hanna v. United States,* 666 A.2d 845, 853 (D.C.1995)) (emphasis added).

■ This court has adopted the "fork in the road" test in cases such as this for determining whether there are two separate criminal acts or one single act:

> If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not.

*Spain v. United States,* 665 A.2d 658, 660 (D.C.1995) (quoting *Irby v. United States,* 129 U.S.App. D.C. 17, 22–23, 390 F.2d 432, 437–438 (1967) (en banc) (Leventhal, J., concurring)). Thus "[a]n interval of time between two criminal episodes may be quite brief but still show that a 'defendant had reached a fork in the road or had acted in response to a fresh impulse.'" *Cullen v. United States,* 886 A.2d 870, 873 (quoting *Spain,* 665 A.2d at 661) (internal quotation marks omitted). Indeed, we

have stressed that "one can experience and act upon a fresh impulse almost immediately." *Ellison v. United States,* 919 A.2d 612, 617 (D.C.2007).

Appellant contends that this case is factually analogous to *Cullen,* in which we held that the defendant engaged in "one continuous course of conduct" and that he was "improperly charged with two violations of the sexual abuse statute." 886 A.2d at 874. The defendant in *Cullen* entered the bedroom of his fifteen-year-old niece and knelt by her bedside. He made contact with his mouth against her inner thigh and then, immediately thereafter, her breast. We held that the "two actions were separated, at the most, by a brief interval, and the brief passage of time between these acts 'did not terminate appellant's original intent' to engage in sexual contact with the complainant without her consent." *Id.* at 875 (citation omitted). "Applying the rule of lenity in our interpretation of the statute," we held that during the course of "a single sexual assault" the defendant had not committed "more than one offense simply by touching more than one part of the victim's body" in sequence. *See Ellison,* 919 A.2d at 617 (discussing *Cullen* ).

By contrast to *Cullen,* in *Ellison* we considered whether the defendant's two convictions of sexually abusing a child merged when the acts took place in close temporal proximity. The eleven-year-old victim in *Ellison* was dragged into a dark bathroom, where she was subjected to more than ten minutes of vaginal intercourse, after which the defendant attempted to have anal intercourse with her. Recalling that when an act of sexual abuse results from a "fresh impulse," the "requirement of an appreciable period of time [between the acts] has no application," we rejected the defendant's contention that his convictions merged because there was no appreciable length of time between the vaginal intercourse and his attempt to penetrate the victim's anus. 919 A.2d at 617. We said that when the defendant ceased the vaginal intercourse and attempted to penetrate the victim anally, he had reached a fork in the road, and was driven by a fresh impulse to commit "a different kind of sexual activity, also prohibited by the same statute...." Thus, we held, "there were successive violations of the statute, and the defendant's convictions did not merge." *Id.* at 618 (citation omitted).[3]

Similarly, in *Sanchez–Rengifo* we upheld the defendant's multiple sexual abuse convictions arising from his two-hour encounter with a fifteen-year-old girl. We reviewed the legislative history of the "Anti-Sexual Abuse Act of 1994," which made clear the legislature's intent "to 'make the laws governing sexually abusive conduct more inclusive, flexible and reflective of the broad range of abusive conduct which does in fact occur....' " 815 A.2d at 357 (citing legislative history). We also noted that the statute outlines the various ways in which an offender may commit a "sexual act" and engage in "sexual contact." *Id.* (citing relevant statutory provisions). We observed that "the legislature ... viewed each of these methods of committing first and second-degree child sexual abuse ...

---

**3.** The statute under which both Ellison and appellant were convicted, D.C.Code § 22–3006, prohibits "a sexual act or sexual contact with another person" by someone "who should have knowledge or reason to know that the act was committed without that other person's permission." Another provision, D.C.Code § 22–3001, defines "sexual act" to include both "the penetration, however slight, of the anus or vulva of another by a penis," § 22–3001(8)(A), and "the penetration, however slight, of the anus or vulva by a hand or finger ... with an intent to ... gratify the sexual desire of any person," § 22–3001(8)(C).

as different in nature and character," and that for each of these acts "different interests are protected; different acts are made criminal...." *Id.*[4]

In *Sanchez–Rengifo,* even though the defendant's acts combined in "a common stream of action," *id.* at 358 (citation omitted), we emphasized the defendant's "decisions to commit different sex acts upon his victim." *Id.* at 359. The convictions did not merge in that case, we concluded, because his decision to cease one type of sexual act and begin another showed that he acted from a fresh impulse. *Id.*

Admittedly, the two acts of sexual abuse with which this appellant was charged show even greater temporal and spatial proximity than was present in either *Ellison* or *Sanchez–Rengifo.*[5] As our cases make clear, however, the requirement of an appreciable period of time between the acts "has no application" if appellant's decision to penetrate D.O. with his index finger was the product of a "fresh impulse." *Ellison,* 919 A.2d at 617; *see Sanchez–Rengifo,* 815 A.2d at 355. Here as in *Ellison* and *Sanchez–Rengifo,* and in contrast to *Cullen,* appellant engaged in two *different types* of sexual acts, each of which is separately prohibited by the statute.[6] We find this distinction to be crucial.

The two acts in which appellant engaged—penetrating D.O. vaginally with his penis, then again with his finger—are "different in nature and character" under the statute. *Ellison,* 919 A.2d at 618 (quoting *Sanchez–Rengifo,* 815 A.2d at 357). They are separately enumerated types of sexual acts. The evidence at trial showed that after yielding to his first impulse to engage in vaginal intercourse with D.O., appellant made a conscious decision to withdraw. Having done so, appellant reached a fork in the road: he could continue to engage in sexual abuse of D.O., or he could desist. Appellant chose the latter option. Acting on a different sexual urge, appellant initiated a different sexual act and invaded a different protected interest. *Sanchez–Rengifo,* 815 A.2d at 357.

We held in both *Sanchez–Rengifo* and *Ellison* that an offender's cessation of one statutorily enumerated type of sexual act and initiation of a different one was strong evidence that he had reached a fork in the road and had acted on a fresh impulse in committing the second act of abuse. *See Ellison,* 919 A.2d at 618 (noting that appellant " 'chose to satisfy a different criminal impulse' " when he "first engag[ed] in one type of conduct prohibited by the statute, and ... then mov[ed] on to a different kind of activity also prohibited by the same statute" (citing *Sanchez–Rengifo* )). We reach the same conclusion in this case. *See Spain,* 665 A.2d at 660 (merger inappropriate when defendant reached a "fork in the road" and invaded a "different interest"). The insertion of appellant's finger into the victim's vagina was "a new criminal act, the product of a new impulse, 'punishable separately from the earlier act.' " *Gardner,* 698 A.2d at 1003 (quoting *Allen v. United States,* 580 A.2d 653, 659 (D.C.1990)); *see Brown,* 795 A.2d at 64 ("where 'successive impulses are separately given, even though all unite in swelling a

---

**4.** Although appellant and the defendant in *Sanchez–Rengifo* were convicted under different sections of the D.C.Code, the analysis of the legislative history in *Sanchez–Rengifo* is equally pertinent to this case.

**5.** There was little record evidence in this case concerning the duration of the encounter. D.O. did testify, however, that the penetration of her vagina by appellant's penis lasted for about five to twenty seconds.

**6.** Penetration with a penis is proscribed by subsection (8)(A), and penetration with a finger is proscribed by subsection (8)(C). See note 3, *supra.*

common stream of action, separate indictments lie'") (quoting *Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

Appellant's two convictions of sexual abuse therefore do not merge, and accordingly they are both

*Affirmed.*