Kennedy McFERGUSON, Appellant,

v.

UNITED STATES, Appellee.

No. 02–CF–632.

District of Columbia Court of Appeals.

Argued Jan. 18, 2005.
Decided March 31, 2005.

Jennifer Daskal, Public Defender Service, with whom James W. Klein, Jaclyn Frankfurt, and Giovanna Shay, Public Defender Service, were on the brief, for appellant.

John P. Gidez, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and Roy W. McLeese III, Lisa Baskerville C. Greene, and Kimberley S. Knowles, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, GLICKMAN, Associate Judge, and PRYOR, Senior Judge.

PER CURIAM:

Appellant was charged, by indictment, with one count of attempted first degree sexual abuse,[1] two counts of enticing a child,[2] one count of second degree child sexual abuse,[3] and four counts of first degree child sexual abuse.[4] After a jury trial on all counts, appellant was convicted of two counts of the latter offense. On appeal he contends the trial judge committed reversible error in denying severance of the offenses and in allowing the prosecution to cross-examine defense character witnesses on the basis of a hypothetical assumption that appellant committed the acts alleged in the indictment. Appellant also asserts there were errors in sentencing. We conclude there was reversible error stemming from the first two contentions and therefore do not consider the sentencing questions.

## I.

### A.

In early June 2001, T.W. and K.K. were school aged girls (fourteen years old), who sang and aspired to be entertainers. While standing on a rail platform at a Metro station, appellant noticed them singing and introduced himself as a choreographer and dancer from New York. In a casual manner, he mentioned that he was seeking singers and dancers to go on tour. The girls stated they were singers and arranged to call appellant at a later time. K.K. called appellant that same day and made an appointment for an audition. T.W., K.K. and a male friend, who was a dancer, met appellant at the Anacostia Metro Station. Appellant expressed some

---

1. D.C.Code §§ 22–4102, –4118 (1999 Repl.), recodified at D.C.Code §§ 22–3002, –3018 (2001).

2. D.C.Code § 22–4110 (1999 Repl.), recodified at D.C.Code §§ 22–3010 (2001).

3. D.C.Code § 22–4109 (1999 Repl.), recodified at D.C.Code § 22–3009 (2001).

4. D.C.Code § 22–4108 (1999 Repl.), recodified at D.C.Code § 22–3008 (2001).

displeasure at the unexpected presence of the male dancer. Nonetheless, they accompanied appellant to his house and went down to the basement. While downstairs, appellant talked about some of his experiences as a performer, shared his scrap books, and showed some videos. He also called a friend on the telephone, who was reputed to be an entertainer, and urged T.W. to speak with him. At about the same time the male dancer performed a routine for appellant. Appellant then showed the group a pornographic video and explained that, in order to evaluate T.W. and K.K. as performers, it would be necessary to touch them in intimate ways. He, as part of a dance routine, rubbed T.W.'s legs, buttocks and breasts; he repeated the same behavior with K.K. As part of the evaluation, appellant said he would need to have an encounter with each female individually. K.K. and the male dancer were escorted upstairs, and appellant returned to the basement with T.W. While downstairs, appellant placed his penis in her vagina and then her mouth. After a short interval, appellant returned to the basement with K.K. and repeated his earlier behavior. Although he was unable to complete intercourse, he did engage in oral sex and masturbation. Appellant warned K.K. not to tell anyone what occurred.

About this time, appellant's friend, who had earlier talked with T.W. on the telephone, arrived. He talked to the group generally about show business and distributed his business card. When T.W. and K.K. seemed unnerved and began crying, they related their experiences in the basement to the friend. He took them home and, later that evening, the police were called.

In the spring of 2001, another complainant, N.M., a young adult female, was introduced to appellant by the same person who had conversed with the younger complainants. At N.M.'s request she met with appellant to discuss her interest in being a choreographer. In his basement she was shown pictures of naked women, and video tapes, including pornographic material. When N.M. stated she had no interest in sexual activities, appellant danced with her and touched her in intimate ways. N.M. began to cry. Appellant masturbated in N.M.'s presence and attempted, without success, to get her to engage in oral sex. She did not report this matter to the police, but later learned that appellant had been arrested.

## B.

Prior to trial appellant filed a severance motion seeking separate trials for the offenses involving the minor complainants, and those involving the adult complainant, N.M. The government opposed the motion on the ground that the evidence of the two incidents would be mutually admissible at separate trials as evidence of intent, motive, absence of mistake or accident, or to show a common scheme or plan. The government also argued that because evidence of the two incidents would be kept separate and distinct, the probative value of joining the offenses would outweigh the risk of unfair prejudice. *See Drew v. United States,* 118 U.S.App. D.C. 11, 17, 331 F.2d 85, 91 (D.C.Cir.1964); *see also* FED. R. EVID. 404(a)(3), (b). The government conceded, at the hearing on the motion, that evidence of one sexual assault incident would not be admissible to show intent in another, but argued that evidence of the two incidents would be mutually admissible as evidence of common scheme or plan. The trial judge initially rejected the government's common scheme or plan argument. However, the judge reconsidered her ruling, stating "[m]aybe I should not have so out of hand rejected common scheme or plan," and denied appellant's severance motion. The judge directed the

government to present its evidence of the two incidents separately.

Appellant did not testify at trial; however, the defense called three witnesses. One witness, a woman, testified that she was a dancer and that appellant had conducted an audition for her in his basement. She stated that appellant had demonstrated dance routines and helped to improve her skills. The remaining two witnesses were character witnesses who had known appellant for a period of years. They gave opinions regarding appellant's truthfulness, peacefulness, honesty and good order. On cross-examination, the government, over defense counsel's objection, asked both witnesses if they learned that "[appellant] had sexually assaulted two young girls, would that change [their] opinion"? One witness stated that his opinion of appellant would not change if such allegations were found to be true; the other testified that his opinion of appellant would change.

## II.

▇▇▇▇ The offenses involving the adult complainant were charged in the same indictment with the offenses involving the two juvenile complainants based on the "similar character" of the offenses. *See* Super. Ct.Crim. R. 8(a). "When joinder is based on the 'similar character' of the offenses, a motion to sever should be granted unless (1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass, or (2) the evidence of each of the joined crimes would be admissible at the separate trial of the others." *Arnold v. United States*, 511

A.2d 399, 404 (D.C.1986). The government opposed appellant's severance motion on the second ground. In doing so, it relied upon the familiar principle announced in *Drew v. United States*, which provides:

Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial.

118 U.S.App. D.C. 11, 16, 331 F.2d 85, 90 (1964); *see also* FED. R. EVID. 404(b).[5]

At the hearing on the severance question, the government narrowed its theory of mutual admissibility of the evidence to the common scheme or plan exception. It also represented that the testimony regarding the different incidents would be kept separate and distinct. As stated, the trial judge, though initially not persuaded, denied the motion and allowed the prosecution to go forward without severance. On appeal, the government again alters its position. It acknowledges that the common scheme or plan exception, applied to the circumstances of this case, is incorrect.[6] *See Ali v. United States*, 520 A.2d 306, 310–12 (D.C.1987). Stated simply, the government now contends that because the evidence of the two incidents was presented in a separate and distinct fashion, there was no abuse of discretion by the trial judge in denying the severance motion, *see Bright v. United States*, 698 A.2d 450, 454 (D.C.1997), and if so, it was harmless. *See*

---

**5.** FED. R. EVID. 404(b) provides in pertinent part:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissi-

ble for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ....

**6.** Appellee's Br. at 20–21.

*Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

■■■ As the trial court's decision to deny severance relied upon the theory of mutual admissibility, however, the government may not now argue on appeal that, despite the error in this reliance, the decision was proper because the evidence of each offense was separate and distinct. A discretionary decision based on an erroneous legal principle constitutes an abuse of discretion. *Hollingsworth v. United States,* 531 A.2d 973, 978 (D.C.1987). Therefore, when a trial judge bases a decision to deny severance on one of the two permissible grounds (i.e., mutual admissibility or separate and distinct evidence), this court should "follow the course charted by the trial court" and then, if it determines the court erred, decide whether the appellant was prejudiced by the failure to sever. *See Arnold,* 511 A.2d at 404 (declining to rule on question of mutual admissibility where trial court based denial of severance on "separate and distinct" rationale, but ultimately finding no prejudice). Because, as the government concedes, the trial court erroneously relied on the "common scheme or plan" theory of mutual admissibility, we should now turn to whether appellant suffered prejudice as a result of the joint trial—a determination that is affected by whether the government actually did present evidence of the offenses separately and distinctly. *See id.* However, because of the importance of the question arising from the cross-examination of the character witness, we defer the harmless analysis until Part IV of this opinion.

### III.

■■■ At trial, the prosecutor, in cross-examining the character witnesses pre-sented by the defense, asked each witness to assume hypothetically that appellant had committed the acts alleged. Given that assumption, each witness was asked whether that hypothesis would change the opinion expressed in direct testimony. It has been a settled practice for many years that opinion or reputation evidence of a character trait may be tested by inquiring whether the witness was aware of specific acts which occurred prior to trial of the case. The purpose is to test the basis of knowledge or credibility of the particular witness. *See Michelson v. United States,* 335 U.S. 469, 477–78, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Rogers v. United States,* 566 A.2d 69, 73 (D.C.1989) (en banc). The prosecutor in this instance departed from the established mode of cross-examination and instead posed the hypothetical question to each witness. There was an immediate objection.[7]

Appellant challenges this form of cross-examination, contending that the questions were flawed as an evidentiary matter and also on constitutional grounds. We agree with appellant that the questions were improper on evidentiary grounds without reaching the constitutional question.

In *Rogers, supra,* although not specifically addressing the subject of cross-examination centered on hypothetical questions, we reiterated that the reason for allowing a cross-examiner to inquire of a character witness about prior specific incidents or acts is to allow the witness to respond appropriately and to give the jury an opportunity to assess the weight of the testimony. *See Rogers, supra,* 566 A.2d at 74. As is readily apparent, the use of a hypothetical question, as here, viewed solely as an evidentiary practice, changes the dynamic of the questioning. If the witness

---

7. Given the record in this case, we are not persuaded by the government's contention that there should be plain error review.

has not taken into account a fact "actually present in [the individual's] background, e.g., a previous arrest or bad act," then "the worth of the witness' opinion is called into question." *In re Fogel,* 679 A.2d 1052, 1056 (D.C.1996) (internal quotation marks and citations omitted). We have required, however, that the cross-examiner "establish that the underlying event actually occurred in order to 'hold the inquiry within decent bounds,'" whether the witness is a *reputation or opinion character witness.* *Rogers,* 566 A.2d at 74 (quoting *Michelson v. United States,* 335 U.S. 469, 481 n. 18, 69 S.Ct. 213, 93 L.Ed. 168 (1948)). The probativeness of questions asking the witness to assume a fact that is presumed in a trial not to have occurred is therefore very low, and the prejudice high, rendering them improper.

The notion that the prejudice resulting from such a guilt-assuming question necessarily outweighs its probative value is easily demonstrated by pondering the witness's answer. The "admission" the prosecutor presumably is seeking to elicit is that the witness's opinion of the defendant would indeed change if she were to learn that the defendant committed the crime; that is the most likely, and perhaps the only sensible, answer if the witness comprehends the question and seeks to be responsive. While this "admission" has no probative value, the prosecutor may score an unfair point by obtaining it, for the jury may think that it somehow reveals a lack of confidence in the defendant on the character witness's part. The witness might, of course, insist that her opinion of the defendant would not change even if she were to learn that the defendant committed the crime. If the witness really understood the question and means to give such a foolish answer, we agree that it might have probative value, for it would suggest that the witness is biased in the defendant's favor and that her opinion should be discounted. The problem, however, is that such an answer most likely indicates either that the witness is either confused by the question or not articulate, i.e., that the witness is really trying to say that she cannot believe that the defendant committed the crime as the question posits. In that most likely scenario, the answer has no legitimate probative value but is obviously prejudicial to the defendant. For these reasons, we conclude that the guilt-assuming hypothetical question posed to the character witnesses in this case was indeed objectionable because its minimal probative value was substantially outweighed by the risk of unfair prejudice to the defendant. The trial court erred in overruling the objection and permitting the question to be asked. *See Moore v. United States,* 757 A.2d 78, 85 (D.C.2000); *Morris v. United States,* 469 A.2d 432, 435–36 (D.C.1983).

Relying upon several federal appellate decisions, appellant also asserts that the cross-examination of character witnesses by the use of guilt-assuming hypothetical questions is a violation of the Due Process Clause primarily because it undermines the presumption of innocence. *See United States v. Oshatz,* 912 F.2d 534, 539–40 (2d Cir.1990), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991); *United States v. Mason,* 993 F.2d 406, 408–09 (4th Cir.1993); *United States v. Candelaria–Gonzalez,* 547 F.2d 291, 294 (5th Cir.1977); *United States v. McGuire,* 744 F.2d 1197, 1204–05 (6th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985); *United States v. Williams,* 738 F.2d 172, 177 (7th Cir.1984); *United States v. Barta,* 888 F.2d 1220, 1224–25 (8th Cir. 1989); *United States v. Shwayder,* 312 F.3d 1109, 1121 (9th Cir.2002), *cert. denied,* 540 U.S. 826, 124 S.Ct. 181, 157 L.Ed.2d 48 (2003); *United States v. Polsinelli,* 649 F.2d 793, 798 (10th Cir.1981); *United States v. Guzman,* 167 F.3d 1350, 1352 (11th Cir.1999). *But see United States v. White,* 281 U.S.App. D.C. 39, 887

F.2d 267, 274–75 (D.C.Cir.1989) (noting that it may be improper to cross-examine reputation witnesses with guilt-assuming questions, but propounding such questions to lay opinion witnesses is permissible). Given our view of the case we need not reach the constitutional question because this issue can be decided on non-constitutional grounds. *See Hunter v. United States*, 606 A.2d 139, 143 (D.C.1992) (citing *Olevsky v. District of Columbia*, 548 A.2d 78, 81 (D.C.1988)).

## IV.

 The government asks us to affirm the convictions on the basis of harmless error. To do so, we must conclude after reviewing the weight of the evidence of guilt, as well as the nature of the errors, that the judgment of guilt was not substantially affected by the errors. *See Kotteakos, supra*, 328 U.S. at 765, 66 S.Ct. 1239. Whether each error viewed in isolation was harmless under a *Kotteakos* standard is a close question. Taking into account the nature of the prosecution's evidence in this case involving child sexual abuse, we are unpersuaded that the severance error, combined with the evidentiary error, can be viewed as having no substantial effect on the outcome of the case. With regard to the severance error, in attempting to show harmlessness, the government points out that the evidence of each offense was presented separately and distinctly, such that the jury would not have amalgamated the evidence of the assaults on the young girls with that relating to N.M. However, the risk that the jury might have found appellant guilty of the charges involving T.W. based on proof of the N.M. offense, was only one of two potential sources of prejudice. *See Ifelowo*

*v. United States*, 778 A.2d 285, 290 (D.C. 2001). Another danger that arises when counts are joined for trial is that a jury may infer that one accused of multiple crimes must be guilty of at least one them. *Id.* This danger was heightened here, as the accusations of sexual assault were so similar in nature.[8]

We need not decide the question of whether the severance error alone warrants reversal, however, as combined with the cross-examination error, we cannot conclude that the errors were harmless. In cases where the verdict depends on a battle between the credibility of the defendant and his accuser, "the testimony of the character witnesses ... assume[s] a position of greater importance than would be true in the ordinary case." *United States v. Polsinelli*, 649 F.2d 793, 798 (10th Cir. 1981); *see also United States v. Candelaria–Gonzalez*, 547 F.2d 291, 293–95 (5th Cir.1977) (reversing convictions where "the crucial issue for the jury" was "whose testimony should be believed, that of appellant ... or that of [the] DEA agent)." Specifically, when (as in this case) a character witness responds that his opinion of the defendant would not change, given the knowledge that the defendant committed the charged crime, the defendant suffers the harm that the jury views the witness as incredible, willing to testify for the defendant "no matter what." *Id.* We, therefore, conclude that cumulatively the two errors were not harmless. Thus the convictions must be vacated and appellant is entitled to a new trial.

*Reversed.*

---

8. The fact that appellant was acquitted on counts related to K.K. and N.M. is relevant to, but not dispositive of, the prejudice determination. *Winestock v. United States*, 429 A.2d 519, 527 n. 11 (D.C.1981).