**Lafayette BAILEY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 06–CF–1422.

District of Columbia Court of Appeals.

Argued Sept. 2, 2009.

Decided Dec. 30, 2010.

---

Corinne Beckwith, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

John P. Gidez, Assistant United States Attorney, with whom Jeffery A. Taylor, United States Attorney at the time the brief was filed, Roy W. McLeese III, Elizabeth Trosman, Deborah L. Connor, and Michelle A. Zamarin, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, BLACKBURNE–RIGSBY, Associate Judge, and NEBEKER, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

■ This case arises from a bizarre and elaborate scheme devised by appellant to extort sexual favors from two victims, both of whom had been recently released from prison and were on probation or parole, by using a forged document and the threat of re-incarceration to coerce their compliance with certain sexual acts. We are asked in this appeal to determine whether the trial court abused its discretion in denying appellant's motion to sever and permitting the joint trial of the claims. A party seeking reversal must make a showing of the "most compelling prejudice" in order for this court to hold that the trial court abused its discretion in refusing to sever properly joined offenses. *Winestock v. United States,* 429 A.2d 519, 527 (D.C. 1981) (citing *United States v. Rhodes,* 569 F.2d 384, 390 (5th Cir.1978)). Here, appellant was not prejudiced by the trial court's refusal to sever, as the evidence of appellant's guilt would have been mutually admissible to prove each offense in separate trials. Therefore, as we will discuss, appellant has failed to make such a showing of compelling prejudice resulting from the denial of the motion to sever.

■ Following a jury trial, appellant Lafayette Bailey was convicted of one count of attempted second-degree sexual abuse[1] against the first complainant, S.C.[2] In addition, appellant was convicted of two counts of first-degree sexual abuse, two counts of second-degree sexual abuse, two counts of third-degree sexual abuse, and two counts of fourth-degree sexual abuse against the second complainant, M.S. In connection with both complainants, appellant was convicted of two counts of forgery[3] and one count of attempted tampering with evidence.[4] Appellant seeks reversal of his convictions and remand to the trial court for separate trials on the grounds that: (1) the trial court abused its discretion in denying appellant's motion to sever the offenses related to each victim; and (2) the sexual abuse convictions should merge into one single first-degree sexual abuse conviction. We affirm the denial of the motion to sever, vacate the forgery convictions[5], and remand for the trial court to merge the eight sexual abuse convictions into two convictions and re-sentence accordingly.

### I.

Appellant devised his plan to extort sexual favors from men recently released from prison by utilizing resources from his job at the District of Columbia Prisoners' Legal Services Project ("Prisoners' Project"), a non-profit organization that as-

---

1. D.C.Code §§ 22–3003(1), –3018 (2001).

2. Out of respect for the privacy of the victims of sex crimes, in this opinion we elect to refer to the complaining witnesses by their initials.

3. D.C.Code §§ 22–3241, –3242 (2001).

4. D.C.Code §§ 22–1803, –723 (2001).

5. Appellant also appealed the constitutional sufficiency of his two forgery convictions, alleging that the fake letters appellant authored did not meet the definition of "written instru-

ments," which is an essential element of the District of Columbia's forgery statute. Because appellant was convicted of a crime where the government failed to prove all of the essential elements, appellant contends his due process rights were implicated. The government concedes that appellant's argument on this issue is correct, and that the forgery convictions must be reversed. We therefore vacate appellant's forgery convictions. See *infra* Part IV.

sists prisoners with various legal matters. Appellant used his position at the Prisoners' Project to obtain criminal history and other information about convicted felons who were recently released on parole and probation. To support his scheme, appellant recounted his knowledge to the complainants about specific facts from their criminal cases—all of which he learned from the court records that he obtained from Superior Court while working at his job—and showed both victims falsified letters drafted on his work computer on fake letterhead from the Lois and Richard England Foundation, an organization that had donated to the Prisoners' Project in the past.

Appellant targeted his first victim, S.C., in early December 2004, shortly after S.C. was released from prison on parole. Appellant telephoned S.C., who he had previously met through mutual friends, and offered to discuss job opportunities with S.C. He later called S.C. and invited him to his home purportedly to discuss the possibility that S.C. could be re-incarcerated for charges originally leveled against him in 1992. When S.C. arrived at the apartment, appellant made sexual advances towards S.C. S.C. refused appellant's advances and requested to see appellant's paperwork relating to the potential charges against S.C. Appellant produced a falsified letter purportedly sent from the Lois and Richard England Family Foundation, which stated that the foundation was interested in hiring appellant to locate S.C. for the purpose of making a recommendation to the Department of Justice regarding S.C.'s re-prosecution. Appellant told S.C. that he could get the charges dismissed if S.C. had sex with him. S.C. rejected appellant's sexual advances and left the apartment.

In early January 2005, M.S., recently released from prison and on probation, received a call from appellant. Appellant invited M.S. to his apartment using the same guise that he used with S.C.—he was preparing a report for the Department of Justice regarding M.S.'s re-prosecution. Once inside the apartment, appellant directed M.S. to sit down in the bedroom to look over the paperwork regarding his case. The paperwork included the same falsified letter from the Lois and Richard England Foundation purportedly hiring appellant to investigate and write a report to support re-prosecuting M.S. on the charges for which M.S. had already been convicted and was serving probation at the time of the meeting. Appellant then told M.S. that he could make the charges disappear in exchange for sex. Appellant then asked M.S. "how [he would] feel if [appellant] was to degrade" him and told M.S. to take off his clothes. When M.S. attempted to leave the bedroom, appellant showed M.S. that he had a gun in his pocket. Appellant then repeated his demand that M.S. remove his clothes, and after M.S. complied, appellant penetrated M.S. with his finger. After asking M.S. if he felt degraded, appellant ordered M.S. into the hallway of the bedroom and penetrated M.S. with his penis.

At trial, the government presented the falsified letter that was found during a search of appellant's desk and computer at work. The letter was addressed to M.S., but was saved under the filename "shon.doc," Shon being an abbreviation of S.C.'s first name. The search of the desk also produced blank Lois and Richard England Foundation letterhead. In addition to the completed letter addressed to M.S., a similar, partially completed letter addressed to S.C. was also on the work computer. Appellant's sister testified that during one of her trips to the jail to visit appellant after his arrest, appellant asked her to remove and destroy a bag of files located in the backyard of his home. After

retrieving the bag, which included a hard copy of the completed letter addressed to S.C., appellant's sister did not destroy the papers but instead turned them over to the government.

Before trial, appellant filed a motion to sever the charges related to S.C. from the charges related to M.S. Appellant argued for severance of the offenses on the ground that a joint trial would be "substantially and unfairly prejudicial" because the evidence involving the separate victims had no relevance to each other outside of showing a predisposition to commit similar offenses. *See* Super. Ct.Crim. R. 14 ("Rule 14"). In opposition to the motion to sever, the government argued that evidence relating to the offenses would be admissible in separate trials for the offenses against M.S. and S.C. because: (1) the incidents were "connected together"; and (2) as evidence showing a "common scheme or plan," motive or intent, and identity. The trial court denied the motion to sever, finding that the two offenses were properly joined[6] because the offenses were based on transactions that were "connected together." *See* Super. Ct.Crim. R. 8 ("Rule 8"). Specifically, Judge Winston found that any prejudicial effect that would result from the charges being tried together was outweighed by the court's interest in judicial economy, as the evidence of both charges would be mutually admissible in separate trials.

## II.

■ Within this jurisdiction, two or more offenses are properly joined in the same indictment if they "are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan." Super. Ct.Crim. R. 8(a) The decision to sever a properly joined case is a discretionary one. Rule 14 states that, "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court *may* ... grant a severance of defendants or provide whatever other relief justice requires." Super. Ct.Crim. R. 14 (emphasis added). The language of Rule 14 is discretionary. We have long recognized that "[a] motion for severance on the ground of prejudicial joinder is committed to the sound discretion of the trial court." *Arnold v. United States*, 511 A.2d 399, 404 (D.C.1986) ("*Arnold II*").

■ Moreover, the trial court's discretionary judgment regarding whether to grant a severance motion is entitled to great deference, and "may be reversed only upon a clear showing of abuse of discretion." *Winestock, supra,* 429 A.2d at 526. Such a showing must clear a high hurdle. In seeking to reverse a trial court's denial of a severance motion, the appellant carries a "difficult" burden. *Id.* at 527. In order to establish the trial court's abuse of discretion in denying the severance, the appellant "must show the most compelling prejudice, from which the court would be unable to afford protection if both offenses were tried together." *Id.* (citation and quotation marks omitted). "The most compelling prejudice" does not encompass all prejudice, for there is the possibility of prejudice whenever similar offenses are joined in a single indictment of a single defendant. *Arnold v. United States,* 358 A.2d 335, 338 (D.C.1976) (en banc) ("*Arnold I*"). Such a showing is

---

6. As counsel for appellant clarified at oral argument, appellant does not challenge the propriety of joinder under Rule 8, but rather appeals the trial court's denial of its motion to sever a properly joined trial under Rule 14.

insufficient to meet the appellant's burden. *Winestock, supra,* 429 A.2d at 527. In seeking a reversal of the trial court's denial of a severance motion, the appellant must demonstrate more than a simple showing that appellant would have stood a better chance of acquittal had the charges been tried separately. *Id.*

■ In the present case, appellant argues that the "similarity of the two crimes dramatically increased the likelihood that the jury would find [him] guilty of one set of offenses based on the evidence of his criminal disposition to commit the same offense against another victim," and that "the evidence of the other sexual assault, with all of its shared peculiarities with the first offense, was the main aspect of the government's case that prevented [him] from trying either case to acquittal." Given the presumption that cases that share a similar character are properly joined, a motion to sever will be granted only where the evidence would not be mutually admissible at separate trials, or the evidence of the multiple charges is likely to be amalgamated in the jury's mind into a single inculpatory mass. *Bridges v. United States,* 381 A.2d 1073, 1075 (D.C.1977); *see also Bright v. United States,* 698 A.2d 450, 456–57 (D.C.1997). In fact, we have more recently suggested that a trial court is *required* to find either mutual admissibility or unlikely amalgamation of the evidence in order to deny severance. *See McFerguson v. United States,* 870 A.2d 1199, 1203 (D.C.2005) (referring to mutual admissibility and separate and distinct evidence as "the two permissible grounds" for denying severance). We do not think that *McFerguson's* more rigid framing of the mutual admissibility analysis is inconsistent with the discretionary language of Rules 8 and 14 or our earlier recognition of the importance of deference to the trial court's discretion in deciding these matters. *See Arnold II, supra,* 511 A.2d at 404; *Winestock, supra,* 429 A.2d at 526.[7] Nevertheless, the record in this case demonstrates that the trial court satisfied *McFerguson's* rigid formulation because it rejected appellant's motion to sever based upon the mutual admissibility of the evidence.[8] The trial court denied the sever-

---

7. *See also Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). In *Zafiro,* the United States Supreme Court rejected an attempt by petitioners to create "a bright line rule mandating severance whenever co-defendants have conflicting defenses." In rejecting the petitioners' argument, the Court reiterated its strong support for deferring to the discretion of the trial court in determining whether severance is appropriate. Using language that echoes our statements in *Arnold II* and *Winestock,* the Court held that, "Rule 14 does not require severance even if prejudice is shown rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro, supra,* 538–39, 113 S.Ct. 933. The *Zafiro* Court specifically referred to mutual admissibility as grounds that *may* justify severance, but do not require it. *Id.* at 539, 113 S.Ct. 933. While *Zafiro* deals with severance of defendants, rather than severance of offenses, it remains instructive here. What

should compel severance is a finding of substantial prejudice that poses "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence," and not merely a finding of mutual inadmissibility or possible amalgamation of evidence without such a finding accompanied by substantial prejudice. *Id.*

8. Although the trial court rested her findings on the mutual admissibility prong, our review of the factual record in this case suggests that Judge Winston could also have rested her findings on the unlikely amalgamation prong, as we see no threat of confusion or amalgamation of the evidence based upon how the government presented its case. That said, we do not base our holding upon unlikely amalgamation, but rather upon our determination that the trial court's finding of mutual admissibility was not erroneous and that appellant has failed to demonstrate that he suffered the

ance motion because it found that the evidence was mutually admissible due to the fact that "these two sets of offenses are based on transactions that are connected together." Such a finding is consistent with our holding in *Johnson v. United States*, 683 A.2d 1087, 1098 (D.C.1996), where we held that evidence of prior bad acts was not barred when it "is direct and substantial proof of the charged crime, is closely intertwined with the evidence of the crime, or is necessary to place the charged crime in an understandable context." Evidence of appellant's use of the same fabricated letter, found both in his home and on his work computer, to extort his two victims into submitting to his assaultive conduct meets the *Johnson* mutual admissibility standard of being "closely intertwined" evidence as well as evidence that places appellant's charged crimes in an understandable context. We, therefore, cannot say that the trial court erred in finding mutual admissibility and denying the motion to sever.

■ Moreover, the evidence of appellant's guilt in this case is strong, and we have held that potential error in denying severance does not rise to the level of reversible error where evidence of appellant's guilt is strong. *See McFerguson, supra*, 870 A.2d at 1205; *Cox v. United*

*States*, 498 A.2d 231, 240–42 (D.C.1985). In this case, the appellant did not deny that he was alone with the two complainants on the nights in question. Instead, appellant bases his defense on challenges to the credibility of the complainants' accounts of what happened when they were alone with appellant in his apartment. However, the complainants' accounts were corroborated by the evidence of the falsified letter found on appellant's computer and the documents found in appellant's apartment; documents that appellant directed his sister to destroy before the authorities could find them. Even if we were to assume that the trial court erred in denying severance, which we do not, the strength of the government's evidence in this case would sufficiently foreclose reversal.[9]

■ Although our cases caution that prejudice should be examined carefully in the joinder of crimes that are of "similar character,"[10] the trial court must still exercise its discretion to weigh the potential prejudice against the interests of judicial economy. *See Tinsley v. United States*, 368 A.2d 531, 533 (D.C.1976). In cases, like this one, where the court finds that appellant did not suffer substantial prejudice due to the mutual admissibility

"most compelling prejudice" as the result of the proper joinder of the charges against him.

9. In fact, part of appellant's argument appears to concede the strength of the government's case against him. In arguing that the trial court erred in finding evidence of the two assaults mutually admissible, appellant contends that evidence that the false letter appellant created to extort M.S. was saved under S.C.'s name on appellant's computer would not have been mutually admissible at separate trials "given the government's use of at least three far more concrete and compelling ways of establishing the fact sought to be proven...." This argument strikes us as too clever by half. While appellant may have a

hyper-technical basis for positing that certain evidence was inadmissible due to its cumulative nature, the only reason appellant can contend that such evidence is cumulative is because of the overwhelming amount of other evidence proving appellant's guilt. Therefore, while appellant may argue that certain evidence technically was cumulative and therefore not mutually admissible, such an argument is entirely unpersuasive in establishing the required showing of the most compelling prejudice stemming from the denial of severance.

10. *See Harper, supra*, 582 A.2d at 488; *Bridges, supra*, 381 A.2d at 1075.

of the evidence of the charges against him, the court is further required to weigh the potential prejudice of that evidence against its probative value before making such a determination. *See id.* On this record, we cannot say that the trial court failed to properly conduct either balancing test. Therefore, we discern no abuse of discretion by the trial judge in denying the motion to sever, and we affirm the trial court's ruling.

### III.

 We now consider appellant's contention that the lesser-included sexual abuse convictions for the encounter with M.S. should merge into the first-degree sexual abuse convictions, and the remaining two first-degree sexual abuse convictions should merge into one sexual abuse conviction. For Double Jeopardy purposes, we apply the "fork in the road" test when determining whether there are two separate criminal acts or one single act and thus, unconstitutional multiple punishments for the same offense. *See Spain v. United States,* 665 A.2d 658, 660 (D.C. 1995). The "fork in the road" test examines whether the defendant reached a stopping point and made a conscious decision to continue. We focus on whether there has been either an "appreciable" amount of time between the acts so as to make them separate offenses, or whether the defendant acted based on a "fresh impulse." *See Sanchez–Rengifo v. United States,* 815 A.2d 351, 354–55 (D.C.2002); *see also Ellison v. United States,* 919 A.2d 612, 616–17 (D.C.2007). We recently decided in *Jenkins v. United States,* a factually analogous case where the defendant penetrated the victim with both his finger and his penis, that the appellant acted on a fresh impulse because he "engaged in two *different types* of sexual acts...." 980 A.2d 421, 426 (D.C.2009) (emphasis in original). Thus, we concluded that penetration with the penis and the finger are "different in nature and character" under the statute. *Id.* (citing *Ellison, supra,* 919 A.2d at 618). Under the same reasoning, we conclude that the two first-degree sexual abuse convictions against M.S. do not merge. However, the government concedes on appeal that the three lesser-included sexual abuse convictions for both of the first-degree assaults against M.S. merge into the two first-degree convictions for the penetration with the finger and the penis. Therefore, the three lesser-included sexual abuse convictions merge into the two first-degree sexual abuse charges, but the two first-degree sexual abuse convictions do not merge into one.

### IV.

We affirm appellant's convictions for attempted tampering with evidence, attempted sexual abuse, and two counts of first-degree sexual abuse. In light of the government's concession that it failed to meet its burden of proof at trial on the forgery charges that the letters were "written instruments" that "could be used in a legal transaction or as a basis of legal liability," we reverse with directions to the trial court to vacate appellant's convictions for forgery and re-sentence appellant accordingly. We also direct the trial court to vacate appellant's convictions for the two counts of second-degree, third-degree, and fourth-degree sexual abuse and re-sentence appellant accordingly.

*So ordered.*