*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 15-CO-866, 15-CO-867, and 15-CO-868

JOSEPH A. BROWN, APPELLANT,

V.

UNITED STATES, APPELLEE.

FILED **03/29/2018**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeals from the Superior Court
of the District of Columbia
(CMD-6506-91, FEL-9002-92, and FEL-1695-97)

(Hon. Ann O'Regan Keary, Trial Judge)

(Argued April 27, 2017                    Decided March 29, 2018)

*Cecily E. Baskir* for appellant.

*Anne Y. Park*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Carolyn K. Kolben*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN, *Associate Judge*, and NEBEKER, *Senior Judge*.

Opinion for the court by *Senior Judge* Nebeker.

Dissenting opinion by *Associate Judge* Glickman at page 10.

NEBEKER, *Senior Judge*: Brown appeals from the denial, as time or otherwise barred, from forty-eight pro se and interrelated motions. The motions collaterally attacked his three convictions in the 1990's (two were on negotiated guilty pleas on 1991 and 1992 weapons offenses, and a third for a first-degree murder conviction in 1997). This court appointed present counsel to represent Brown on the appeal. Brown was serving a life sentence in a California federal prison for the murder when he was charged with assault on a prison guard in 2008. He unsuccessfully presented an insanity defense to that charge, where he had the burden of persuading the jury by clear and convincing evidence that he had an abnormal mental condition which deprived him of capacity for choice and control of his conduct at the time of the murder. *See* 18 U.S.C. § 17. The jury was unable to reach a verdict and a mistrial was declared. The indictment was later dismissed on motion of the government.

The argument on appeal is that Brown's four counsel in the 1990's were constitutionally ineffective in failing to recognize and develop possible insanity defenses to those charges. He presents his defense expert's testimony in his California trial (a Dr. A.A. Howsepian) to challenge as ineffective his four counsel

in the 1990's.[1] Brown's initial argument is that this court should remand and direct that the trial court hold a hearing on the issue of the ineffectiveness of his counsel in order to show or justify cause for the delay in his challenges. In her thirty-page order, the trial court meticulously dealt with each of Brown's pleadings, which included many motions based on D.C. Code § 23-110, error coram nobis, for evidentiary hearings to amend his sentence, all filed between March 2012 through December 2014. She reasoned that there is no evidence to explain "why [Brown] failed to raise his ineffective assistance of counsel claim during his direct appeal . . . ." The court noted that even if Brown had demonstrated adequate reason for delay, he presents no evidence that supports "a reasonable probability that . . . the result of the proceeding would have been different." In fact, many of the events cited by his psychiatrist, Dr. Howsepian, as contributing to Brown's insanity occurred after the cases at issue here, such as Brown's nine years of solitary confinement, which came after the 1990's convictions. The trial court also found that the doctor's opinion pertained only to Brown's insanity at the time of the 2008 assault, "many years after his conduct in the instant case." She noted that there

---

[1] Appellant's briefing focuses on the ineffectiveness of trial counsel in the three separate cases, but at oral argument, appellant's counsel argued that if trial counsel was ineffective, so was appellate counsel by failing to raise this issue during the direct appeal for the 1997 conviction.

was nothing in the record demonstrating that any prior counsel should have been aware of any possible condition affecting Brown's mental condition. The trial court found no obligation on the part of counsel to investigate Brown's mental health simply because appellant disclosed that he was shot in 1991. We agree.

In order to prevail when bringing a claim of ineffective assistance of counsel, appellant must show that "his trial attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the error affected the outcome of the trial to his prejudice." *Simpson v. United States*, 576 A.2d 1336, 1337 (D.C. 1990) (*see Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). Generally, an appellant should collaterally attack his conviction on the basis of ineffective assistance of counsel during the pendency of his direct appeal. *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987). Where an appellant failed to do so, we require appellant to show cause for the delay and prejudice as a result of the delay. *Id*. (*see Head v. United States*, 489 A.2d 450, 451 (D.C. 1985)). In order to show cause, appellant must show "exceptional circumstances" that prevented him from bringing his claim in a timely manner. *Head*, 489 A.2d at 451 (citations omitted). To show prejudice, appellant must show that the errors at trial created more than a mere "*possibility* of prejudice,

but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Washington v. United States*, 834 A.2d 899, 903 (D.C. 2003) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).[2]

The dissent argues that the question of procedural default as a result of Brown's failure to bring these claims in a timely manner "blends" with the question of the merits of Brown's ineffective assistance of counsel claims. However, the Supreme Court has said that "the question of cause for a procedural default *does not turn* on whether counsel erred or on the kind of error counsel may have made." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (emphasis added). Ineffective assistance of counsel excuses a procedural default only where the ineffectiveness of counsel was the cause of the procedural default. *Id.* ("[I]f the

---

[2] This procedural bar is not easy to overcome. We have held claims that are so "vague and conclusory," like the speculative claims made by Brown, that they do not require a hearing under § 23-110 also fail to show cause for delay. *Vaughn v. United States*, 600 A.2d 96, 97-98 (D.C. 1991).

Additionally, we have said that in situations where appellant "has already launched several collateral attacks on his conviction, the reasons supporting the application of the cause and prejudice test are even more compelling." *Washington*, 834 A.2d at 902 (quoting *Matos v. United States*, 631 A.2d 28, 30 (D.C. 1993)).

procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . ."); see also *Washington*, 834 A.2d at 904 n.10 (interpreting *Murray v. Carrier* as saying that "ineffectiveness of counsel may constitute 'cause' only when that ineffectiveness *itself* is the very reason why such claims were not made on direct appeal" (emphasis in original)). In Brown's case, there is no ineffectiveness in the first instance.

Brown showed no cause for his failure to file this collateral attack in a timely manner. We have held that the unavailability of claims resulting from the trial counsel's actions are only cause for delay where the counsel's own failure to effectively communicate with the defendant led to the delay in filing. *See, e.g.*, *White v. United States*, 146 A.3d 101, 105-06 (D.C. 2016) (the trial court and counsel's misleading statements regarding appellant's eligibility for parole led to the guilty plea appellant sought to withdraw once he was properly informed of his parole eligibility); see *supra* page 5-6. Here, Brown alleges the opposite and contends that: a latent condition, withheld from counsel by defendant, was the cause of the delay. See *infra* page 7. Moreover, if Brown's mental condition was not "reasonably available" to Brown or his counsel prior to 2009, it is difficult to

deem trial counsel's failure at the time of trial to investigate the matter in the 1990's unreasonable. We are therefore unpersuaded by the dissent's argument that Brown's factual basis for his claim may not have been reasonably available to him prior to Dr. Howsepian's assessment for his 2009 trial.

Furthermore, there was no ineffective assistance of counsel, even if Brown could overcome the procedural bar. There were no observable symptoms or statements from Brown that could have reasonably called attention to the possibility of an insanity defense. The expert testimony from Dr. Howsepian showed that Brown had been traumatized by injuries in the 1990's and later when in prison, including a nine-year period of solitary confinement, and such trauma could produce latent Post Traumatic Stress Disorder (PTSD). He added that PTSD would lead to avoiding conversations about its effect.[3] Indeed, Brown told his examining psychiatrist that, "I never discussed it [his symptoms] with anyone.

---

[3] Avoidance and hiding one's PTSD symptoms is part of the disorder's symptoms. For instance, the 2007 edition of the DSM-IV-TR discusses PTSD (this edition was in effect at the time of the California trial) and states that "[s]timuli associated with trauma are persistently avoided. The person commonly makes deliberate efforts to avoid thoughts, feelings or conversations about the traumatic event." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders IV Text Revision 464 (4th ed. 2007) [hereinafter DSM-IV-TR].

This is the first time." Thus, we have on this record an admission by Brown that he withheld from his counsel facts with which he now seeks to charge counsel with being professionally incompetent for not knowing or recognizing as the basis for a possible insanity defense. Dr. Howsepian's ultimate and material testimony was that Brown was insane in 2008.[4] Regardless, Brown presents his 2008 insanity diagnosis as evidence of his mental state in the 1990's. Moreover, at Brown's initial prison evaluation no mental disorder was noted.

Notwithstanding the dissent's argument to the contrary, there is simply no evidence that counsel would have had a reason to investigate appellant's mental state at the time of trial in the 1990's. Not only did Brown not mention any mental condition to alert counsel, but also the psychiatric testimony in the California trial does not describe, and there is no other showing of, any observable symptoms of an abnormal mental condition in the 1990's. Therefore, there was nothing which could have reasonably alerted his counsel to a possible insanity defense. *See Cosio*

---

[4] In addition to PTSD, Dr. Howsepian diagnosed Brown with Schizotypal Personality Disorder in 2009 which included such symptoms as "overelaborate, tangential, and circumstantial, speech . . . suspiciousness and paranoid ideation, and lack of close friends or confidants." The DSM-IV-TR classifies this disorder as including "pervasive pattern of social and interpersonal deficits marked by acute discomfort with, and capacity for, close relationships." DSM-IV-TR at 697. Dr. Howsepian's testimony, however, focused on the PTSD diagnosis.

*v. United States*, 927 A.2d 1106, 1127 (D.C. 2007) (en banc) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)) ("[W]e must assess whether the challenged investigative omission was objectively unreasonable under the circumstances counsel confronted. . . . The duty to conduct a reasonably thorough investigation 'does not force defense lawyers to scour the globe on the off-chance something will turn up.'"). Absent some indicia of a mental condition, there is sufficient ground to find counsel's actions in the 1990's reasonable.

Simply put, in order for Brown's claim to succeed, the court would have to engage in pure speculation.[5] *Curry v. United States*, 498 A.2d 534, 540 (D.C. 1985) (citing *Williams v. United States*, 421 A.2d 19, 25 (D.C. 1980)). Counsel cannot be deemed ineffective for failure to raise an insanity defense in the absence of any other "good defense."

Accordingly, we hold that Brown's counsel did not perform in an

---

[5] The dissent speculates that Brown "may" or "might" or "could" show counsel deficiencies in not developing insanity defenses. The dissent also postulates that since there is no appearance of a motive or "any other good defense . . . it is arguable that trial counsel had reason enough to explore . . . an insanity defense." In addition, the dissent speculates that Brown's latent PTSD may have had observable symptoms.

objectively unreasonable way and were not ineffective by not raising insanity defenses. Since we conclude that Brown has failed to show cause for the delay, we need not reach the prejudice prong. *See Cosio*, 927 A.2d at 1131 (when cause for delay is shown, prejudice must then be considered).

The trial court's order is hereby

*Affirmed.*

GLICKMAN, *Associate Judge*, dissenting: This appeal arises from the denial of appellant Brown's *pro se* D.C. Code § 23-110 motions, in which he pursues relief from convictions in the 1990s on account of his mental illness and possible insanity at the time. Brown's principal claim is an ineffective-assistance-of-counsel challenge to his 1997 conviction for first-degree murder. The salient consideration for me is that the Superior Court denied this claim without an evidentiary hearing and without first appointing counsel to assist Brown, in spite of Brown's current mental disabilities and incarcerated status and the strong statutory presumption in favor of holding a hearing. I think this denial was premature. Brown proffered sufficient facts in my view to show that, with an attorney's help, he may be able to overcome the procedural bar and demonstrate that his trial

counsel was ineffective in failing to investigate and pursue an insanity defense to the murder charge.

**I.**

The murder charge arose from the fatal shooting of Kenneth Powell on January 31, 1996. Brown himself was shot in the wrist in the encounter. At trial, the government conceded that the motive for Brown to shoot Powell – someone he grew up with and knew very well – was unknown. Brown's defense relied on his testimony that an unknown third party shot both him and Powell in a marijuana sale gone bad. It was a weak defense to a strong government case.[1] This court affirmed Brown's conviction in an unpublished opinion.[2]

Brown first claimed his trial counsel was ineffective in failing to investigate

---

[1] The evidence that Brown was the shooter included the victim's dying declaration, the testimony of eyewitnesses who saw Brown flee the scene of the shooting, and a trail of blood leading to his grandmother's house, where the police found his blood-stained sweatshirt among other physical evidence. Brown was impeached with what he admitted were lies he told the police to explain how he had been shot and with his prior convictions for carrying a pistol without a license and assault with a dangerous weapon.

[2] *Brown v. United States*, No. 98-CF-1170, Mem. Op. & J. (D.C. Jan. 16, 2003).

an insanity defense in the *pro se* § 23-110 motions he filed in Superior Court in November 2011. Brown based that claim on a psychiatric evaluation in support of an insanity defense that he presented to assault charges brought against him in 2008.[3] Dr. A. A. Howsepian, the psychiatrist who conducted the evaluation, diagnosed Brown as suffering from chronic post-traumatic stress disorder ("PTSD") since 1991, when it was triggered by a profoundly traumatic shooting that left Brown in a coma and near death. This condition was exacerbated, the psychiatrist found, by Brown's schizotypal personality disorder and a history of brain injuries and grand mal seizures dating back to Brown's early childhood (as well as by later traumatic events and the prolonged solitary confinement that Brown endured in federal prison). Dr. Howsepian explained that

> [O]ne of the most prominent symptoms of PTSD is hypervigilance which can, and in a significant number of people – including Mr. Brown – does evolve into frank paranoid ideation. . . . In addition, persons with PTSD, including Mr. Brown, often have difficulty controlling anger and are irritable. . . . Mr. Brown exhibits multiple symptoms of Schizotypal Personality Disorder, including

---

[3] On May 23, 2008, while serving his sentence at a federal penitentiary in California, Brown attempted to stab a correctional officer who entered his cell over his objection. Brown was charged with assault with intent to commit murder and assault on a federal official. His federal public defender had him evaluated by a psychiatrist who ultimately testified at Brown's federal district court trial in 2010.

overelaborate, tangential, and circumstantial speech, a flat to blunted to constricted affect, suspiciousness and paranoid ideation, and lack of close friends or confidants. Persons with Schizotypal Personality Disorder are especially prone to cognitive distortions involving paranoid ideation in virtue of this personality disorder's being the personality disorder that is most closely related to schizophrenia. Mr. Brown[']s having Schizotypal traits in addition to PTSD further amplifies his capacity for experiencing paranoia. . . . Mr. Brown has a history of Traumatic Brain Injuries and a grand mal seizure disorder (that began at age 7 years), both of which can make one more prone to aggressive behavioral dyscontrol. . . . Mr. Brown did not exhibit any signal for malingering.

In his report and his testimony at Brown's federal court trial, Dr. Howsepian gave it as his professional opinion that, as a result of his mental illness, Brown was unable to appreciate the wrongfulness of his assaultive act. "[A]ll he perceived was a threat," Dr. Howsepian explained,

in virtue of which he became emotionally unmodulated and overwhelmed to a degree that he could not detach from the perceived threat in order to consider whether this threat was veridical or illusory . . . . His capacity to understand the wrongfulness of what he did was crippled by an overwhelming surge of emotion that was driven by profound paranoid cognitive distortion. And in light of his profoundly impaired impulse control, he then swiftly took actions that he also could not modulate. Mr. Brown

was rigidly, overwhelmingly, and forcefully convinced at
that time that his survival was at stake.[4]

Brown alleged that he had not known of his mental impairments prior to Dr.

Howsepian's evaluation,[5] but that his trial counsel in the Powell murder case

should have investigated his mental condition because Brown had told him about

the life-changing 1991 incident in which he had been critically wounded and left in

a coma. Brown explained that he had no record or history of violence before that

incident. He also proffered that his counsel was aware that he had no known

motive to shoot Powell. From an adequate evaluation of his mental condition,

Brown alleged, his counsel would have learned that he was suffering from PTSD at

the time of the shooting and could have put on an insanity defense that would have

led to a more favorable outcome at trial.

In denying Brown's motions without a hearing, the Superior Court held that

Brown had not demonstrated cause for failing to raise his ineffective-assistance-of-

---

[4] My colleagues state that Brown's insanity defense was "unsuccessful[]."
*Ante* at [2]. I do not think that an entirely accurate characterization. Brown's trial
resulted in a hung jury, and the district court later granted the government's motion
to dismiss the indictment without prejudice on September 2, 2011.

[5] He had no prior diagnosis of PTSD or other mental illness.

counsel claim on direct appeal. The court further held that even if Brown could establish cause for that failure, he could not show prejudice because "he has failed to 'demonstrate that there is a reasonable probability that . . . the results of the proceeding would have been different' but for the alleged trial errors." *Shepard v. United States*, 533 A.2d 1278, 1282 (D.C. 1987). My colleagues agree that Brown failed to demonstrate the requisite cause and affirm without reaching the question of prejudice.

## II.

"While the decision whether to hold an evidentiary hearing on a § 23-110 collateral challenge to the constitutionality of a conviction is committed to the trial court's discretion, the extent of that discretion is 'quite narrow.'"[6] The statute states that the court "shall" grant a hearing "[u]nless the motion and files and records of the case *conclusively* show that the prisoner is entitled to no relief."[7] In accordance with this directive, we have declared repeatedly that "[a]ny question

---

[6] *Bellinger v. United States*, 127 A.3d 505, 514-15 (D.C. 2015) (quoting *Long v. United States*, 910 A.2d 298, 308 (D.C. 2006)).

[7] D.C. Code § 23-110 (c) (emphasis added).

regarding the appropriateness of a hearing [on a § 23-110 motion] should be resolved in favor of holding a hearing,"[8] and that "in reviewing a summary denial, 'we must be satisfied that under no circumstances could the petitioner establish facts warranting relief.'"[9] Ordinarily, moreover, "if the prisoner's § 23-110 claim is sufficient for a hearing, it presumably will be colorable enough to warrant appointment of counsel under [the Criminal Justice Act, D.C. Code] § 11-2601 (3)(A) [2012 Repl.]."[10]

A defendant may have to overcome procedural barriers to his motion for collateral relief from his conviction. In particular, "[w]here a defendant has failed to raise an available challenge to his conviction on direct appeal [or during the

---

[8] *Newman v. United States*, 705 A.2d 246, 261 (D.C. 1997) (internal quotation marks omitted).

[9] *Bellinger*, 127 A.3d at 515 (quoting *Long*, 910 A.2d at 308). The trial court may deny a motion without a hearing if (1) the allegations are vague and conclusory, (2) the claims are palpably incredible, or (3) relief would be unwarranted even if the assertions were true. *Id.* While Brown ultimately might not be able to establish his claim of ineffectiveness, I do not believe the claim is facially deficient under these tests. To the extent the issue turns on Dr. Howsepian's expert opinion, I would note our oft-repeated warning that credibility determinations "may be resolved only by recourse to a full evidentiary hearing." *Id.* (quoting *Newman*, 705 A.2d at 261).

[10] *Wu v. United States*, 798 A.2d 1083, 1089 (D.C. 2002).

pendency of his direct appeal], he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure."[11] As with other factual issues presented by a § 23-110 motion, if the facts pertaining to whether the defendant can show cause and prejudice are in dispute, an evidentiary hearing is required to resolve that dispute.[12]

"To establish legally sufficient 'cause' for his failure to raise a claim on direct appeal, . . . appellant must show (if he can) that he 'was prevented by exceptional circumstances' from raising the claim at the appropriate time."[13]

---

[11] *Brown v. United States*, 795 A.2d 56, 60 (D.C. 2002) (quoting *Head v. United States*, 489 A.2d 450, 451 (D.C. 1985)).

[12] *See* 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 26.3 (e), p. 1113 (3rd ed. 1998) ("[A] hearing must be held on controlling and controverted factual issues surrounding the [asserted procedural] default and any excuses for it[.]") (citing, *inter alia*, *Wainwright v. Sykes*, 433 U.S. 72, 80 (1977); *Townsend v. Sain*, 372 U.S. 293, 312-18 (1963); *Brown v. Allen*, 344 U.S. 443 (1953)); *see also, e.g.*, *Jenkins v. Anderson*, 447 U.S. 231, 234-35 n.1 (1980) ("[A]pplication of the 'cause'-and-'prejudice' standard may turn on factual findings that should be made by a district court."); *Holleman v. Duckworth*, 155 F.3d 906, 910-12 (7th Cir. 1998) (reversing district court's summary dismissal of claim on abuse-of-the-writ grounds and remanding for an evidentiary hearing to determine whether petitioner could establish cause for his failure to discover and raise the claim in an earlier collateral challenge to his conviction).

[13] *Hardy v. United States*, 988 A.2d 950, 960-61 (D.C. 2010) (quoting

(continued…)

Ordinarily, this means showing that "some objective factor external to the defense" prevented the timely raising of the claim.[14] The *McCleskey* Court identified three types of objective factors that would constitute sufficient cause: (1) interference by officials; (2) constitutionally ineffective assistance of counsel; and (3) "a showing that the factual or legal basis for a claim was not reasonably available."[15]

Brown predicates his showing of cause on his trial counsel's failure to arrange for a mental health examination, which (Brown posits) would have revealed – to counsel and to Brown himself – that he suffered from mental illness and could have mounted a meritorious insanity defense to the murder charge. As a result of that failure, Brown argues, the factual basis for his claim was not reasonably available to him prior to Dr. Howsepian's assessment – in other words, not until long after the conclusion of his direct appeal. The question of cause to excuse Brown's procedural default thus blends with the merits question of whether

---

(…continued)
*Washington v. United States,* 834 A.2d 899, 903 (D.C. 2003)).

[14] *McCleskey v. Zant*, 499 U.S. 467, 493 (1991).

[15] *Id.* at 494.

his trial counsel was constitutionally ineffective.[16]

To succeed on his claim of ineffective assistance of counsel, Brown must show that his trial counsel's representation was deficient and that the deficient performance prejudiced his defense.[17] The deficiency prong calls for a showing that counsel's performance "fell below an objective standard of reasonableness," a standard established by reference to "prevailing professional norms."[18] The prejudice prong is satisfied by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[19]

---

[16] It should be noted that Brown does not rely on his mental illness by itself as excusing his procedural default. *Cf. Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) ("[I]n order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief.").

[17] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[18] *Id.* at 688.

[19] *Id.* at 694.

There is no dispute, I think, that a defense "counsel's failure to explore the possibility of a not guilty by reason of insanity defense through reasonable investigation, including the use of a qualified mental health expert, can rise to the level of constitutionally defective counsel[,]" especially when that client faces a murder charge.[20]  My colleagues reject that possibility in the present case, however, because Brown has not alleged that he informed his counsel of his mental illness or that he displayed observable symptoms that could have alerted counsel to the possibility of an insanity defense.  I think it is too soon to reject Brown's claim on these grounds.

First, that Brown did not tell his counsel that he had an abnormal and debilitating mental condition is not a sufficient ground in itself to excuse counsel's

---

[20] *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91) ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); *see also Cosio v. United States*, 927 A.2d 1106, 1123 (D.C. 2007) (en banc) ("Under the Sixth Amendment guarantee, a criminal defendant is entitled to the benefits of counsel's informed judgment and choice among reasonable alternatives; it is objectively unreasonable for defense counsel to make an uninformed decision about an important matter without justification for doing so.").

failure to investigate it, if counsel otherwise should have done so.[21]  On the record before us, we cannot conclude that Brown knew or should have known he had a mental disorder before he was evaluated in 2008.  Without a comprehensive mental health evaluation and diagnosis, Brown could not have been expected to realize he had PTSD (or other mental impairment), let alone to realize that his mental condition could serve as a basis for a legal defense to his murder charge.

Second, it is premature in my view to conclude that Brown's defense counsel in the murder case lacked a good reason to investigate the possibility of an insanity defense.  Given the lack of any other good defense to present, and the absence of an identifiable motive for Brown to have killed his friend, it is arguable that trial counsel had reason enough to explore the possibility of an insanity defense.  Beyond that, counsel allegedly was aware of Brown's gravely traumatic shooting in 1991 and the way in which it altered his life and behavior.  This, too, reasonably might have sparked investigation of Brown's mental condition.  And

---

[21] *See, e.g.*, *Lundgren*, 440 F.3d at 802 (Merritt, J., dissenting) ("I am not convinced that polling a delusional defendant to determine whether he believes he is insane should be a primary factor in counsel's decision to pursue the only plausible defense in a capital case.") (citing *Brennan v. Blankenship*, 472 F. Supp. 149, 156 (D. Va. 1979), *aff'd*, 624 F.2d 1093 (4th Cir. 1980) ("Under any professional standard, it is improper for counsel to blindly rely on the statement of a criminal client whose reasoning abilities are highly suspect.")).

finally, we really cannot say at this stage that Brown's counsel observed no signs of his client's abnormal condition that reasonably should have alerted him to the need for further investigation. As previously mentioned, Dr. Howsepian identified a number of symptoms that an attorney working with Brown might well have noticed: difficulty controlling anger, irritability, suspiciousness, paranoid ideation, distinctive speech patterns, flat affect, and lack of close or confidential personal relationships. On that score, I think we have to make allowances for the fact that because Brown was incarcerated, mentally impaired, and without the aid of an attorney, his ability to obtain and marshal additional evidence – from his trial counsel's case file or persons who knew him in the 1990s, for example – was limited. "We have a duty to be indulgent of pro se pleadings."[22] If Brown does not have enough evidence to show cause now, he has proffered at least enough in my view to suggest he might acquire enough if counsel is appointed to help him and he is granted a hearing.

To overcome the procedural bar, Brown also must show that he suffered "'actual and substantial' prejudice from his failure to raise [the ineffective

---

[22] *Pettaway v. United States*, 390 A.2d 981, 984 (D.C. 1978).

assistance of counsel claim] before now."[23] When a collateral attack on a conviction is based on the claim of ineffective assistance of counsel, the petitioner must establish "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."[24] Therefore, "the prejudice inquiry . . . require[s] some inquiry into the nature of the claim and its effect on the trial."[25] This inquiry is largely a factual one. Where, as here, the putative error of counsel was an investigative omission that resulted in counsel's failure to discover and make use of evidence favorable to the defense, the prejudice inquiry has a dual aspect for purposes of overcoming the procedural default: the defendant must show a reasonable probability that a competent attorney would have discovered and presented the

---

[23] *Brown*, 795 A.2d at 60 (D.C. 2002) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[24] *Martinez v. Ryan*, 566 U.S. 1, 14 (2012); *McCrimmon v. United States*, 853 A.2d 154, 161 (D.C. 2004) ("We now turn to address prejudice, both in the context of 'cause and prejudice' and as an integral part of the claim of ineffectiveness of counsel. Prejudice sufficient to satisfy 'cause and prejudice' is shown if the defendant would have been entitled to relief, in this case, for ineffectiveness of trial counsel."); *see also Brown*, 795 A.2d at 60 (stating that if appellant's ineffective assistance claim "has merit, he undeniably suffered 'actual and substantial' prejudice, from his failure to raise it before now") (quoting *Frady*, 456 U.S. at 170 (1982)).

[25] *Murray v. Carrier*, 477 U.S. 478, 504 (1986).

proffered favorable evidence (here, evidence supporting an insanity defense); and, if so, a reasonable probability that the evidence would have resulted in a different outcome at trial (here, an acquittal by reason of insanity).[26]

Since my colleagues do not reach the question of prejudice, I shall be brief. As indicated above, Brown may be able to show that a reasonable criminal defense attorney, representing a defendant with Brown's history on a charge of first-degree murder to which no other defense appeared viable, would deem it necessary to have the defendant's psychiatric condition evaluated for the purpose of determining whether it would support a defense. As to what that evaluation would have shown in his case, Brown presented the court with much more than the mere "skeletal proffer of expert testimony" that we could deem too vague and conclusory to require a hearing.[27] He relied on a psychiatrist's report and testimony that he actually suffered from chronic PTSD since 1991, and that his PTSD was exacerbated by his schizotypal personality disorder ("SPD") and other

---

[26] *See Cosio*, 927 A.2d at 1132.

[27] *Thomas v. United States*, 50 A.3d 458, 474 n.7 (D.C. 2012) (noting that "appellant neither identified his proffered expert witness or the expert's relevant qualifications, nor explained exactly what kind of testimony an expert would have given").

factors that predated the homicide for which he was convicted. From this a jury fairly could infer that Brown more likely than not suffered from the symptoms of PTSD and SPD at the time of the homicide in 1996. PTSD has been the basis for an insanity defense in other jurisdictions,[28] and Brown's condition demonstrably supported a substantial insanity defense to his assault charges in 2008.[29] To be sure, whether it would have done so in 1996 is yet to be adequately explored and evaluated; this was not something Dr. Howsepian was engaged to do or had any

---

[28] *See State v. Bottrell*, 14 P.3d 164, 169-70 (Wash. Ct. App. 2000) (allowing evidence of PTSD to support a claim that defendant could not form specific intent to murder); *State v. Mizell*, 773 So. 2d 618, 620 (Fla. 1st Dist. Ct. App. 2000) (allowing evidence of PTSD at a murder trial in support of a claim of self-defense); *United States v. Rezaq*, 918 F. Supp. 463, 470 (D.D.C. 1996) (finding that defendant's severe PTSD constituted a mental disease for purposes of insanity defense); Alyson Sincavage, *The War Comes Home: How Congress' Failure to Address Veterans' Mental Health Has Led to Violence in America*, 33 Nova L. Rev. 481, 496 (2009) (reporting that PTSD was successfully used as exculpatory evidence for an insanity defense in a case in which an Iraq war veteran was charged with murder); *see also Masterson v. State*, 516 So. 2d 256, 258 (Fla. 1987) (allowing evidence of PTSD during sentencing as a mitigating factor). *But see United States v. Cartagena-Carrasquillo*, 70 F.3d 706, 712 (1st Cir. 1995) (stating that in most instances where PTSD is the basis for an insanity defense, the defense fails because of the difficulty of establishing "severe" mental distress at the time of the offense).

[29] Admittedly, Brown's condition may have deteriorated significantly between 1996 and 2008, when his PTSD was first diagnosed. In reaching his professional conclusions, Dr. Howsepian considered not only Brown's shooting in 1991 but also, in part, the subsequent traumas Brown had endured and the aggravating impact of Brown's prolonged solitary confinement in prison.

reason to do. Although Brown thus did not proffer specific facts in his *pro se* motion linking his 2008 diagnosis to the 1996 crime, or an expert's opinion that he had a meritorious insanity defense to the murder charge, I think it fair to say that his proffer provided reason to believe Brown might be able to prove his allegations of prejudice if a hearing were held at which he would have legal and expert assistance.

For the foregoing reasons, I would reverse the summary denial of Brown's § 23-110 motion seeking relief from his conviction for first-degree murder and remand for the appointment of counsel and an evidentiary hearing on his ineffective assistance claim.